Steven James GOODHUE; SJG Enterprises LLC, fka G & S Enterprises LLC, Plaintiffs—Appellants,

v.

CATALINA MORTGAGE COMPANY, an Arizona corporation; Clifford E. Dubois; Philip J. Foti, Defendants—Appellees.

No. 01–16574.

D.C. No. CV–99–01527–SRB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2002.

Decided Aug. 26, 2003.

Steven James Goodhue, Esq., Goodhue & Pearl LLC, Denver, CO, Richard C. Hopkins, Hopkins & Associates, Boulder, CO, for Plaintiffs–Appellants.

Russell E. Krone, Esq., Leonard Felker Altfeld, Greenberg & Battaile, P.C., Jeffrey H. Greenberg, Esq., Leonard Felker Altfeld, Greenberg & Battaaile PC, Tucson, AZ, for Defendants–Appellees.

Before McKEOWN and PAEZ, Circuit Judges, and POLLAK,* Senior District Judge.

## MEMORANDUM **

Appellant Steven James Goodhue ("Goodhue")[1] appeals the District Court's summary judgment and award of attorneys' fees in favor of appellees Catalina Mortgage Company, Clifford E. DuBois, and Philip J. Foti. He also contends that the District Court erred by not ruling on his motion to compel before rendering judgment. We affirm in part, reverse in part, and remand.

Because the parties are familiar with the facts, we do not recite them here.

Discussion

*Applicable law*

As an initial matter, this court must resolve the parties' dispute regarding the

---

* The Honorable Louis H. Pollak, Senior United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. The term "Goodhue," as used in the course of this opinion, should be understood to refer collectively to appellant Steven J. Goodhue in his individual capacity and as the representative of appellant SJG Enterprises, LLC.

state law applicable to this diversity suit. Goodhue contends that Colorado law is applicable to his case, while the appellees seek application of Arizona law.

A district court ordinarily applies the choice-of-law rules of the forum state. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 243 n. 8, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). However, when a case has been transferred from another state's federal court under 28 U.S.C. § 1404(a), the choice-of-law provisions of the originating state govern. *Id.; Consul Ltd. v. Solide Enters., Inc.,* 802 F.2d 1143, 1146 (9th Cir.1986).

Colorado, the state from which the case was transferred, has adopted the "most significant relationship" test to determine the appropriate choice of law for disputes involving either contract or tort claims. *First Nat'l Bank v. Rostek,* 182 Colo. 437, 514 P.2d 314, 320 (1973); *see also Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1536 (10th Cir.1996) (citing *Rostek* ).

For contract claims, the Colorado Supreme Court determines the appropriate law to apply by considering: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the contract's subject matter; and (5) the residence of the parties. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau,* 198 Colo. 444, 601 P.2d 1369, 1372 n. 4 (1979).

For tort actions, the Colorado Supreme Court has adopted § 145 of the Restatement (Second) of Conflicts to govern choice of law. Section 145 lists general factors to be considered in tort cases, and its commentary suggests following rules directed toward particular torts when possible. Restatement (Second) of Conflicts § 145 cmt. a (1971); *see also Trierweiler,* 90 F.3d at 1536 (applying Colorado choice of law principles and looking to Restate-

ment § 148 for guidance in choosing law for a fraud claim). Section 148 of the Restatement lists various factors to be considered in the specific context of fraud or misrepresentation: (1) the place where the plaintiff acted in reliance upon the representations; (2) the place where the plaintiff received the representations; (3) the place where the defendant made the representations; (4) the residence or place of business of the parties; (5) the place where the subject matter of the transaction was situated; and (6) the place where the plaintiff was to render performance.

■ Under either the fraud/misrepresentation or contract choice-of-law standard, Arizona has a more significant relationship with Goodhue's claims than does Colorado. The property Goodhue purchased is located in Arizona, the alleged breach occurred in Arizona, and Catalina is an Arizona corporation. The only connections to Colorado that have been alleged by the plaintiffs are that Goodhue and his company reside in Colorado and that, as a result, the impact of the alleged breach was visited upon them in Colorado. The plaintiff's residence in Colorado is outweighed by the fact that the locus of the transaction and negotiations was in Arizona. Arizona law is therefore properly applied to the facts of this case.

*Breach-of-contract claim*

The District Court held that the Goodhue's loan application was nothing more than an offer, and so concluded that no contract was formed that placed any obligations on Catalina. In reaching that conclusion, the court relied upon *United California Bank v. Prudential Insurance Co.,* 140 Ariz. 238, 681 P.2d 390, 424 (Ct.App. 1983), which held that a loan application is "merely a preliminary source of information for the lender" to use in determining

the feasibility of providing a viable loan on the proposed terms. In *United California*, as here, the lender prepared a loan application, which the borrower executed and returned with a nonrefundable fee. *Id.* at 399. The commitment letter in the Arizona state case also mirrored Catalina's in that it contained conditions that differed materially from those in the loan application. *Id.* at 422. The *United California* court held that the loan application constituted an offer that was countered by the lender's commitment letter containing different terms. *Id.* at 424.

Goodhue responds to the District Court's characterization of the application as merely an offer by noting that the Catalina defendants [2] had earlier acknowledged that an enforceable contract existed. Therefore, Goodhue insists, "[t]he real dispute concerns what Catalina's obligations were under the Loan Application Agreement, not whether a contract existed." The Catalina defendants did not suggest otherwise to the District Court; in one submission, the defendants explained: "Contrary to Plaintiffs' assertions, Defendants do not contend that the [application] 'was not an enforceable contract.' It was...." As Catalina reads the application, it was incumbent upon the company only "to attempt to procure a Commitment."

■ We agree with Goodhue that the application was more than just an offer that imposed no obligations on Catalina. The application was prepared by Catalina after discussions between the parties, had terms that required Goodhue's "acceptance," and could only be modified or terminated in a writing signed by both parties. The terms of the document made clear that it was "not a commitment," but

the fact that a nonrefundable $600.00 processing fee was tendered tends to indicate that Catalina incurred some sort of affirmative obligation upon executing the application. While the *United California* holding also involved a loan application drafted by the lender, tendered with a nonrefundable fee, *United California* differs from the case at bar in a salient way: the court in *United California* was at some pains to emphasize the absence, on the loan application, of a signature line for the lender, 681 P.2d at 424; in the case at bar, the loan application was signed by both parties.

■ That this court finds a contractual obligation existed does not mean that a reversal is warranted. Examination of the terms of the application reveals that, whatever Catalina contracted to do, Catalina did *not* contract to provide a loan commitment with specific terms: the application makes clear that it is not a loan commitment and that Goodhue's recourse in the event that no acceptable commitment was forthcoming within thirty days was to request a refund of a portion of the deposit. The context in which the application was executed further buttresses the conclusion that Goodhue had no contractual right to insist upon the provision of the exact loan described in the application. The very fact that Goodhue agreed to pay for a physical condition report, an environmental assessment, and a pest inspection should have alerted him to the possibility that the results of those analyses might have some effect on the loan he would be able to obtain.

Although we agree that a contract did exist between Goodhue and the appellees, remanding the contract claim would be a

---

**2.** The term "Catalina defendants" comprises Catalina and individual defendants DuBois and Foti.

pointless exercise if Goodhue's breach-of-contract claim in the District Court consisted only of the allegation that Catalina was required to provide a loan without impounds; we have determined as a matter of law that the contract contained no such requirement. Catalina contends that Goodhue never suggested to the District Court that the breach-of-contract claim was based on anything other than the failure to issue a loan commitment that contained the terms listed in the application. A review of Goodhue's submissions to the District Court confirms Catalina's assertion. The complaint, with regard to breach of contract, states simply: "Defendant Catalina breached the terms of the Loan Application Agreement by requiring ... impounds." Similarly, in the opposition to Catalina's motion for summary judgment, Goodhue alleged no breach other than the inclusion of impounds in the loan commitment.

■ In the briefing to this court, Goodhue's allegations of breach expanded significantly. Goodhue now submits that the failure to meet the July 31, 1998 deadline to issue a loan commitment, by itself, constituted a breach of the application agreement. Further, he suggests that the use of out-of-state inspectors, who had little experience in the Phoenix market, breached an obligation to perform the contract in good faith. Without expressing any opinion on the merits of these contentions, we decline to consider them on appeal, as they were not raised in the District Court. *Kline v. Johns–Manville*, 745 F.2d 1217, 1221 (9th Cir.1984) (holding that, absent the possibility of "manifest injustice," an appellate court will not consider arguments not raised in the trial court); *Taylor v. Sentry Life Ins. Co.*, 729 F.2d 652, 655–56 (9th Cir.1984) (per curiam) (stating that before the Court of Appeals will consider a new issue, the proponent "must show exceptional circumstances why the issue was not raised below").

Goodhue's breach-of-contract allegations and arguments before the District Court were one-dimensional in their focus on a breach related to Catalina's failure to provide a specific loan. Because, as we have explained, Catalina had no contractual obligation to provide a commitment with terms identical to those enumerated in the application, the breach-of-contract claim, as pleaded, was properly dispensed with by summary judgment. While it is possible that Catalina may have breached certain other contractual requirements, Goodhue will not be permitted to allege those breaches for the first time on appeal.

*Claims related to fraud*

After holding that no contract existed, the District Court went on to hold that "[w]ithout a binding promise, the Plaintiff's claims for negligent misrepresentation, fraudulent misrepresentation, and nondisclosure/concealment also fail." While we have determined that a binding contract did indeed exist, Goodhue's claims, if they were based solely on an allegedly fraudulent promise to provide a specific loan, would still fail to pass muster, given the absence of any allegation that Catalina made promises with a present intent not to perform. However, we will remand these claims because, in his submissions to the District Court, Goodhue pointed to other promises that might support his fraud claims.

The District Court noted that, in responding to the Catalina defendants' summary judgment motion, Goodhue argued that his fraud claims were more comprehensive in scope than the mere allegation that Catalina promised a loan without impounds. Goodhue suggested that he had been told, falsely, that Catalina was "competent and professional" and had the "expertise" to "provide a loan consistent with

the terms of the loan agreement" and to "meet all applicable deadlines," and that Catalina "hired competent and professional vendors to perform third party inspections and reports." With respect to these broad allegations,[3] the District Court held that there was no evidence to support Goodhue's case.

We are less than sanguine about the prospects of Goodhue's broad allegations of fraud. The amended complaint alleged only deception related to the "nature" and "terms" of the prospective loan – and so is in tension with the specificity that is called for when allegations of fraud are made. See Fed.R.Civ.P. 9(b). Additionally, it would seem that claims based on representations regarding the ability to "meet all applicable deadlines" would, like a claim based on a promise to provide a specific loan, need to include allegations that representations were made with a present intent not to perform.

■ Despite our reservations regarding the broad allegations of fraud, we find that those allegations were supported by at least a modicum of evidence – chiefly in the form of sworn representations made in Goodhue's affidavit and an expert report submitted by Nicholas L. Scheidt. Therefore, we find that the District Court erred by granting summary judgment based solely on a lack of supporting evidence (particularly given the uncertain status of plaintiff's motion to compel, addressed *infra*, which might have produced further evidence). Because the District Court expressed no other basis for its decision regarding the broad allegations, we will remand the claims for negligent misrepresentation, fraudulent misrepresentation, and nondisclosure/concealment to the District Court for reconsideration in light of the evidence provided by Goodhue.

*Claim of negligence*

We will remand the negligence claim for similar reasons. The District Court granted summary judgment on the negligence claim after reporting that Goodhue had failed to produce significant probative evidence supporting his allegations, and that Goodhue "chose ... to rely on the bare allegations set forth in his Complaint and Response to the Defendants' Motion for Summary Judgment." The record, however, reveals that Goodhue submitted at least some evidence supporting his negligence claim: the report of his proposed expert witness Nicholas L. Scheidt (which relied upon facts alleged in Goodhue's affidavit). Scheidt's report lists a number of alleged breaches of the duties of a "professional and competent commercial mortgage broker." It cannot be said that Goodhue failed to produce any evidence supporting his claim. We leave it to the District Court on remand to determine if, under Arizona law, a mortgage broker owes a duty of care to prospective borrowers, and, if so, the scope of that duty.

The dissent characterizes the existence of such a duty of care on the part of a mortgage broker as "a legal issue that was central to the appeal," and argues that we, the majority, are attempting to "sidestep" that issue by remanding to the District Court. Because the opinion explaining the order under review contains no discussion of the duty owed, we believe prudence dictates permitting the District Court, well versed in Arizona law, to weigh the matter. While, arguably, it would be preferable to permit the District Court the opportunity

---

3. For purposes of discussion, we intend the term "broad allegations" to refer to those claims of misrepresentation and deception based on promises other than that to provide a loan without a requirement for impounds.

to perform the analysis without the influence of this court's preliminary observations, two claims by the dissent necessitate a response.

First, as just mentioned, the dissent describes the existence of a mortgage broker's duty as "a legal issue that was central to the appeal." This strikes us as a surprising characterization, given that the District Court did not mention the issue at all, and the appellant's brief contains no discussion of it.[4] We would be hardpressed to agree that a "central" issue in an appeal is one raised only by the appellee regarding a matter absent from the opinion of the trial court. Precisely because the matter was not fully briefed and developed in this court (nor was there reason for the appellant to do so), we refrain from deciding the issue now.

Second, *Barmat v. John & Jane Doe Partners A–D,* 155 Ariz. 519, 747 P.2d 1218 (Ariz.1987), does not, as might be inferred from the dissent, make clear how a court should treat a negligence claim against a mortgage broker. In *Barmat,* the Arizona Supreme Court explained that, "[a]s a matter of public policy, attorneys, accountants, and other professionals owe special duties to their clients, and breaches of those duties are generally recognized as torts." *Id.* at 1222. The first question to be answered in this case, as we see it, is whether a state-licensed mortgage broker is one of the "other professionals" to which the *Barmat* court referred. In what may be viewed as analogous situations, Arizona courts have entertained suits against those whose behavior was alleged to have fallen short of the standard of care expected of their profession. *See, e.g., Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 682 P.2d 388, 402 (Ariz.

1984) (insurance agent); *Fry's Food Stores of Ariz., Inc. v. Mather & Assocs., Inc.,* 183 Ariz. 89, 900 P.2d 1225, 1226 (Ariz.Ct. App.1995) (architect, engineer, and contractor); *Haldiman v. Gosnell Dev. Corp.,* 155 Ariz. 585, 748 P.2d 1209, 1212 (Ariz.Ct. App.1987) (real estate salesman and broker); *Nat'l Hous. Indus., Inc. v. E.L. Jones Dev. Co.,* 118 Ariz. 374, 576 P.2d 1374, 1377 (Ariz.Ct.App.1978) (engineer). The *Darner* court expressed the concept of the professional negligence suit in general terms that might be thought to encompass Goodhue's claim: "The principle involved here is simply that a person who holds himself out to the public as possessing special knowledge, skill or expertise must perform his activities according to the standard of his profession. If he does not, he may be held liable under ordinary tort principles of negligence for the damage he causes by his failure to adhere to the standard." *See Darner,* 682 P.2d at 403. Later in the *Darner* opinion, the court added the comment (quoted only in part by the dissent): "We are a nation which also prides itself on a tradition of allowing a person to rely upon the words of another who, because of special knowledge, undertakes to act as an advisor." *Id.* From the phrases "special knowledge" and "undertakes to act as an advisor," the dissent appears to glean a pleading requirement that a plaintiff allege reliance on a defendant mortgage broker's particularized special knowledge or specified undertaking to assume an advisory role. As a matter of ordinary textual construction, it appears to us that the quoted sentence – not chopped up into phrases but taken in its entirety – while broad enough not to preclude the dissent's interpretation, can hardly be said to compel it. We think it sensible to look

---

4. To be sure, the appellant's brief does refer to duties that may have been breached, but throughout the relevant discussion, Goodhue does not waver from the assumption that a mortgage broker owes *some* duty to its client.

to the District Court to consider whether Arizona's jurisprudence infuses the quoted sentence with the special meaning the dissent attaches to it.

■ Because, at this stage in the litigation, we are not convinced that the common law of negligence in Arizona does not give rise to a claim against a mortgage broker, we cannot accept the dissent's assertion that "in the absence of any contract, it is clear that Catalina would not owe any of the alleged duties to Goodhue." *Barmat* made explicit that, in relationships between professionals and their clients, "the law imposes special duties ... *regardless of whether there is a contract."* *Barmat,* 747 P.2d at 1221 (emphasis added).

In the end, we reach no conclusion as to the existence of a duty on Catalina's part. That task is entrusted, in the first instance, to the District Court, which will be aided in the endeavor by the full briefing that we lack.

*Motion to compel*

On appeal, Goodhue has alleged that the District Court erred by ruling on the summary judgment motion while a motion to compel discovery was pending. Because this court today reverses the summary judgment on the negligence and fraud-related claims, we need not address the issue related to the motion to compel; the District Court may consider the motion on remand.[5]

*Attorneys' fees*

■ As a final matter, we will vacate the District Court's imposition of attorneys' fees. In light of our decision to remand some of Goodhue's claims, there is not yet a prevailing party in this case, and so, at this stage in the litigation, a determination with respect to attorneys' fees would be premature.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

McKEOWN, Circuit Judge, dissenting.

McKEOWN, Circuit Judge.

I agree with the majority's analysis on the choice-of-law issue, breach of contract claim, and the award of attorney's fees. But I respectfully part company as to the remand on the fraud and negligence claims. In my view, the district court correctly granted summary judgment on these claims. We would stretch Arizona law and the facts to an unrecognizable degree were we to decide otherwise.

With respect to the fraud claim, the majority notes that Goodhue's "claims based on representations regarding the ability to 'meet all applicable deadlines' would, like a claim based on a promise to provide a specific loan, need to include allegations that representations were made with a present intent not to perform." I agree. Nonetheless the majority concludes that Goodhue's allegations of fraud were supported by "at least a modicum of evidence–chiefly in the form of sworn representations made in Goodhue's affidavit and [an expert] report...." Neither Goodhue's affidavit nor the expert report, however, contain any evidence upon which the district court could conclude that Catalina made promises with the present intent not to perform them. Indeed, one wonders why it would even make sense for Catalina to make such promises without intending to perform them, given that Catalina had

---

5. Because the allegations in the amended complaint are inadequate to support the breach-of-contract claim against Catalina, the discovery sought by the motion to compel would not alter the outcome of that claim.

Indeed, Goodhue's brief argues only that he "was precluded from obtaining the discovery necessary to support elements of his tort claims."

no contractual obligation to perform at all within any particular time frame. As there is no evidence to suggest that Catalina knew it would not fulfill its non-binding promises, summary judgment was proper. And, to the extent that Goodhue takes refuge in "the uncertain status" of his motion to compel, he has failed to establish how the evidence could support his fraud claim, a predicate to avoiding summary judgment. *See* Fed. R. Civ. Proc. 56(f).

A review of the district court's order reveals that remand would be a fruitless exercise. As the district court correctly found, Goodhue failed to offer evidence to suggest that Catalina knew that its representations were false when made. But the district court also held that any claims based on promises to provide a loan with certain terms are precluded by the statute of frauds. Even if the district court's dismissal of Goodhue's fraud claims was "influenced" by the court's mistaken determination that no contract existed, it is unnecessary to remand Goodhue's fraud claim just so the district court can reaffirm its findings with respect to Goodhue's lack of evidence and the statute of frauds.

Regarding the negligence claim, the majority's effort to sidestep the question of whether a mortgage broker owes a duty of care to a prospective borrower under Arizona law is most unusual. One wonders how the majority can evaluate whether Goodhue's evidence is sufficient to survive summary judgment without first determining what evidence is necessary to satisfy the tort of negligence. In my opinion, reversing the district court and remanding to determine a legal issue that was central to the appeal just delays the day of reckoning.

Goodhue asserts that Catalina was negligent in performing a variety of tasks related to the loan application process. I agree with Catalina that, "[i]f Catalina owed any of those duties to Goodhue, the duty would have been created by the contract relationship between the parties, not imposed by law. In other words, but for the Loan Application, Catalina would have no duties to Goodhue whatsoever." Although the distinction between actions arising in contract and actions arising in tort has become increasingly ambiguous, it is clear that "[w]here . . . the duty breached is not imposed by law, but is a duty created by the contractual relationship, and would not exist 'but for' the contract, then breach of either express covenants or those necessarily implied from them sounds in contract." *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218, 1222 (Ariz.1987) (explaining distinction between actions arising in tort and actions arising in contract). Here, in the absence of any contract, it is clear that Catalina would not owe any of the alleged duties to Goodhue. Because Goodhue has failed to identify any duties owed to him except those provided in the loan application, Goodhue's negligence claim fails as a matter of law.

Even if there were such a duty, Goodhue's claim would fail because, notably, he does not assert that he suffered harm in reliance on Catalina's advice in an area where Catalina has "special knowledge" or "under[took] to act as an advisor." *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 682 P.2d 388, 403 (1984). Rather, Goodhue asserts that he was harmed by such things as Catalina's failure to return his phone calls, by Catalina's failure to adequately train its staff, by Catalina's preparation of the contract (the loan application), and by the manner in which Catalina conducted its inspections to determine whether it wished to offer Goodhue a loan with the requested terms. These are merely challenges to

Catalina's business practices, not Catalina's performance of its duties in an area where it held itself out to the public as possessing special skill or knowledge. Allowing Goodhue to bring a negligence claim based on these assertions would be analogous to allowing a patient to sue a doctor when the waiting time to see the doctor or the time it takes to get an appointment exceeds some industry goal, even in the absence of a breach of professional duty.

For these reasons, I respectfully dissent. I would affirm the district court.