NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

DEEPWATER DIVERS, INC., a California corporation, *Plaintiff/Appellee*,

*v.*

WELLS FARGO INSURANCE SERVICES USA, INC. a North Carolina
corporation, as successor in interest to WELLS FARGO INSURANCE
SERVICES OF ARIZONA, INC., an Arizona corporation,
*Defendant/Appellant*.

No. 1 CA-CV 13-0518
FILED 6-30-2015

---

Appeal from the Superior Court in Maricopa County
No. CV2009-033792
The Honorable Emmet J. Ronan, Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

---

COUNSEL

Burch & Cracchiolo, P.A., Phoenix
By Jake D. Curtis, Daryl Manhart, Melissa Iyer
*Counsel for Plaintiff/Appellee*

Kutak Rock LLP, Scottsdale
By Paul S. Gerding, Paul S. Gerding, Jr., Andrew J. Russell
*Counsel for Defendant/Appellant*

--------

## MEMORANDUM DECISION

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Lawrence F. Winthrop joined.

--------

**G E M M I L L**, Judge:

¶1        Defendant/Appellant Wells Fargo Insurance Services USA, Inc. ("Wells Fargo") appeals a judgment entered upon a jury verdict in favor of Plaintiff/Appellee Deepwater Divers, Inc. ("Deepwater"). The jury found against Wells Fargo on claims of breach of contract and negligence. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings consistent with this decision.

## BACKGROUND

¶2        Deepwater is a California-based company that provided commercial diving services. In September 2006, Wells Fargo provided brokerage services to help Deepwater obtain necessary commercial liability insurance. Those policies terminated in September 2007, and Deepwater did not renew them. At the time of termination, Deepwater owed $7500 in unpaid premiums on an umbrella policy purchased through Wells Fargo in May 2007.

¶3        In February 2007, Deepwater signed a Master Services Agreement ("MSA") with Badger Oil Corporation. The MSA allowed Deepwater to submit bid proposals for jobs with Badger Oil, and in October 2007, Badger Oil accepted Deepwater's bid on a large-scale diving project, worth $291,000 in gross revenue to Deepwater. In accordance with the MSA, Deepwater was required to maintain various insurance policies, including comprehensive general liability and umbrella liability coverages, and to have Badger Oil named as an additional insured on all policies.

¶4        In order to obtain the necessary insurance, Deepwater again engaged the brokerage services of Wells Fargo. On October 15, 2007, Deepwater emailed Wells Fargo representative Greg Golucci to inform him that the Badger Oil job was "going forward." In that email, Deepwater attached the portion of the MSA that outlined the insurance requirements for the Badger Oil job. On October 24, Deepwater wired the $7500 needed to pay the premiums outstanding on its prior policy. In a telephone

conversation on Friday, October 26, Deepwater Vice President Michael Fennesy informed Golucci that the certificates of insurance needed to be in place by noon on the next business day, October 29. Fennesy testified that Golucci assured him that the certificates would in fact be available at that time.

¶5        By October 29, Wells Fargo had not yet obtained a quote for the insurance Deepwater required. On October 31, Wells Fargo informed Deepwater that its application had been declined by a prospective provider. Deepwater responded with an email emphasizing the urgency of its need for proof of insurance coverage and outlining the financial expenditures it had made in preparation for the Badger Oil job. This email also expressed Deepwater's concerns that Badger Oil would soon take legal action if the insurance coverage was not in place. On the next day, November 1, Wells Fargo severed its relationship with Deepwater. As a result of Deepwater not having the necessary insurance, Badger Oil cancelled the contract and Deepwater lost the job.

¶6        Deepwater brought suit against Wells Fargo, alleging breach of contract and negligence claims related to the failed attempt to procure insurance coverage. Before trial, Wells Fargo filed a motion for summary judgment, arguing that there was no valid contract between the parties, Wells Fargo's statements could not support a negligence claim, and Deepwater's negligence claims were barred by the economic loss doctrine. The court denied the motion. At the close of Deepwater's case, Wells Fargo reasserted these arguments in a motion for judgment as a matter of law. The court again denied the motion and sent the claims to the jury.

¶7        The jury found in favor of Deepwater on its breach of contract and negligence claims and awarded $1,134,442 in damages. On the negligence claim, the jury assigned 95 percent of the fault to Wells Fargo and the remaining five percent of fault to Deepwater. In October 2013, the court entered judgment in favor of Deepwater and awarded it pre- and post-judgment interest, attorney fees, and costs. Wells Fargo filed a renewed motion for judgment as a matter of law under Arizona Rule of Civil Procedure 50 and a motion for new trial under Arizona Rule of Civil Procedure 59. Both motions were denied. Wells Fargo timely appeals. This court has jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-120.21 and -2101.

## ANALYSIS

### I.     Denial of Summary Judgment

**¶8**          Wells Fargo argues that the trial court erred when it denied its motion for summary judgment.  However, the denial of a motion for summary judgment is not a "final order" under A.R.S. § 12-2101 and therefore is generally not appealable or subject to review after judgment. *Martin v. Schroeder*, 209 Ariz. 531, 533, ¶ 5, 105 P.3d 577, 579 (App. 2005). Accordingly, we need not address directly whether summary judgment was properly denied.

### II.    Denial of Motion for Judgment as a Matter of Law

**¶9**          Wells Fargo also claims that the trial court erred in denying its motions for judgment as a matter of law ("JMOL") and renewed JMOL. We review de novo a trial court's denial of JMOL. *Felder v. Physiotherapy Assoc.*, 215 Ariz. 154, 162, ¶ 36, 158 P.3d 877, 885 (App. 2007).  A motion for JMOL may be granted when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  Ariz. R. Civ. P. 50(a).  Because "in considering a JMOL motion, a trial court should apply the same test for deciding whether to grant a motion for summary judgment," we consider Wells Fargo's legal arguments in support of its motion for summary judgment as relevant to its JMOL motion.  *See Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 259–60, ¶ 20, 92 P.3d 882, 889–90 (App. 2004).

####     A.     Breach of Contract Claim

**¶10**          First, Wells Fargo claims that no contract existed between the parties, arguing Deepwater offered no evidence that the parties reached any agreement as to the carrier of insurance, duration of coverage, or amount of premium.  In the absence of any specific terms, Wells Fargo asserts that any agreement between it and Deepwater was merely conditional and incapable of sustaining a breach of contract claim.  Deepwater argues that it did not need to present any such evidence and alleges instead that the parties entered into a valid contract to procure insurance, not for insurance itself, and that Deepwater suffered damages when that contract was breached.  The question before this court, then, is whether a reasonable jury could have found that Deepwater proved the existence of an agreement capable of sustaining a breach of contract claim.

**¶11**        To determine whether a claim based on a breach of duty sounds in contract, this court looks to "whether the defendant would have a duty of care under the circumstances even in the absence of a contract." *Premium Cigars Intern., Ltd. v. Farmer-Butler-Leavitt Ins. Agency*, 208 Ariz. 557, 568, ¶ 33, 96 P.3d 555, 566 (App. 2004) (quoting *Ramsey Air Meds, LLC v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15, ¶ 27, 6 P.3d 315, 320 (App. 2000), *abrogated on other grounds by Webb v. Glitten*, 217 Ariz. 363, 174 P.3d 275 (2008)).  If the obligation of the party would have arisen even without a contract in place, then the obligation sounds in tort and will not support a breach of contract claim.  *Id.*; *see also Barmat v. John & Jane Doe Partners A–D*, 155 Ariz. 519, 523, 747 P.2d 1218, 1222 (1987) (explaining that "where the implied contract does no more than place the parties in a relationship in which the law then imposes certain duties recognized by public policy, the gravamen of the subsequent action for breach is in tort, not contract").

**¶12**        When an insurance broker undertakes to procure insurance coverage, it incurs "a duty to the insured to exercise reasonable care, skill, and diligence" in seeking out the policy.  *Premium Cigars*, 208 Ariz. at 566, ¶ 22, 96 P.3d at 564 (quoting *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 397, 682 P.2d 388, 402 (1984)).  This duty is not a contractual duty, however, because it does not arise from a specific contractual relationship.  Instead, it is implied as a matter of law.  *See id.*  Because the "special duties" professionals such as attorneys and accountants owe to their clients are implied in law, breaches of these duties "are generally recognized as torts."  *Barmat*, 155 Ariz. at 523, 747 P.2d 1222.

**¶13**        In *Barmat*, our supreme court explained that claims for breaches of duties implied in law sound in tort, rather than in contract.  *Barmat*, 155 Ariz. at 523, 747 P.2d at 1222.  That case involved a client's malpractice suit against a lawyer.  The client claimed that the lawyer had breached his duty to render competent and ethical service.  *Id.* at 521, 747 P.2d at 1220.  In order to stand under the relevant statute, the client's claim had to arise out of an express or implied contract.  *Id.* at 523, 747 P.2d at 1222.  The Arizona Supreme Court held that although a contract between an attorney and a client includes an implied covenant to provide competent service, that covenant is implied in law, not in fact.  *Id.* at 521–22, 747 P.2d at 1220–21.  Therefore, the claim did not arise out of a contract.  *Id.* at 524, 747 P.2d at 1223.  Similarly, an insurance broker's duty to exercise reasonable care in procuring an insurance policy arises as a matter of law.  Claims alleging a breach of that duty therefore sound in tort and not in contract.

**¶14**        A promise to procure insurance may, however, sound in contract if all requirements of contract formation are satisfied. *Premium Cigars*, 208 Ariz. at 568, ¶ 35, 96 P.3d at 566. The purported contract for insurance must be supported by "sufficient specification of terms so that the obligations involved can be ascertained." *Regal Homes, Inc. v. CNA Ins.*, 217 Ariz. 159, 166, ¶ 29, 171 P.3d 610, 617 (App. 2007) (quoting *Savoca Masonry Co. v. Homes & Son Const. Co.*, 112 Ariz. 392, 394, 542 P.2d 817, 819 (1975)). A sufficiently specific contract for insurance must include all the essential terms of the policy, including the subject of insurance, the duration of coverage, and the policy premium. *See Gulf Ins. Co. v. Grisham*, 126 Ariz. 123, 125, 613 P.2d 283, 285 (1980).

**¶15**        We agree with the contention in Deepwater's answering brief that the agreement in this case was an agreement to procure insurance: "The essential terms of the contract between the parties were that Golucci, on behalf of Wells Fargo, promised, by noon on October 29th, to obtain the insurance policy placement Deepwater needed to meet the Badger Oil requirements." It was not an agreement on the terms of one or more specific insurance policies. Michael Fennesy testified that Golucci offered to procure insurance for Deepwater and that Deepwater accepted this offer. As a result, Wells Fargo undertook, as a matter of law, a duty to exercise reasonable care in procuring an insurance policy. But in the absence of any sufficiently specific agreement regarding the insurance company, the extent and duration of coverage, and the policy premium, Wells Fargo had no greater contractual obligation as a result of Golucci's alleged promise. It had the usual duty to exercise reasonable care, which it assumed as a matter of law. Any claim Deepwater may have as a result of the breach of this duty is therefore a tort claim, not a contract claim. *See Barmat*, 155 Ariz. at 523, 747 P.2d at 1222; *see also Travelers Ins. Co. v. Breese*, 138 Ariz. 508, 511, 675 P.2d 1327, 1330 (App. 1983) ("A promise lacks consideration if the promisee is under a preexisting duty to counter-perform.").

**¶16**        Deepwater, by failing to prove the existence of the elements necessary to form a contract for insurance, did not present evidence sufficient to support a breach of contract claim. Any claim Deepwater may possess from Wells Fargo's failure to procure insurance sounds in tort, not contract. Accordingly, the trial court erred in denying Wells Fargo's motion for JMOL on Deepwater's breach of contract claim.

### B.      Negligence Claim and the Economic Loss Doctrine

**¶17**      Wells Fargo also argues that, because any alleged damage is purely pecuniary, Deepwater's negligence claim is barred by the economic loss doctrine.  The economic loss doctrine, however, applies only when the parties have entered into a contract defining their relationship.  *See Sullivan v. Pulte Home Corp.*, 232 Ariz. 344, 346, ¶ 9, 306 P.3d 1, 3 (2013); *Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320, 323, ¶ 11, 223 P.3d 664, 667 (2010).  Because no contractual agreement existed between the parties in this case, the economic loss doctrine does not apply and the court correctly denied Wells Fargo's motion for JMOL on this issue.

## III.     Proposed Jury Instructions

**¶18**      At trial, Wells Fargo presented separate proposed jury instructions regarding Deepwater's contract and tort claims.  Wells Fargo requested the court instruct the jury on whether Deepwater had proven a claim for negligent misrepresentation.  Wells Fargo argues that the court erred when it did not include these proposed instructions in its final instructions.  We conclude the court did not err in declining to include Wells Fargo's negligent misrepresentation instructions in the final jury instructions because the specific claims addressed therein were not at issue in the case.

**¶19**      To determine whether proposed instructions were improperly omitted from the final jury instructions, this court considers the evidence presented in the light most favorable to support the theory of the party proposing the instruction.  *Miller v. Arnal Corp.*, 129 Ariz. 484, 489, 632 P.2d 987, 992 (App. 1981).  In general, a party who requests instructions is entitled to have them given to the jury if they are legally proper, supported by the evidence, and pertinent to an important issue.  *DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 144 Ariz. 6, 10, 695 P.2d 255, 259 (1985).  But requested jury instructions must appropriately address the legal issues presented.

**¶20**      Wells Fargo's proposed instructions on negligent misrepresentation were properly rejected by the trial court because negligent misrepresentation was not alleged in the case. Wells Fargo claims that Deepwater's negligence claim is more properly construed as a claim for negligent misrepresentation.  Contrary to Wells Fargo's assertions, however, the gravamen of the tort allegations was not negligent

misrepresentation but common-law negligence on the part of an insurance broker.

**¶21**        Liability for negligent misrepresentation is described by the Restatement (Second) of Torts § 552, as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Neither in its complaint nor its argument does Deepwater allege that it relied on Wells Fargo's promise to provide insurance brokerage services as guidance when it decided to enter into the contract with Badger Oil. Rather, it alleged and argued that Wells Fargo assumed a duty when it contracted with Deepwater for insurance services, that it breached that duty, and that the breach caused damage to Deepwater. The court did not err when it rejected Wells Fargo's proposed jury instructions on negligent misrepresentation.

## IV.     Motion in Limine to Exclude Master Services Agreement

**¶22**        Wells Fargo next argues that the court erred in denying its motion in limine to preclude any mention of the MSA Deepwater entered with Badger Oil. We review a trial court's evidentiary rulings for an abuse of discretion. *See Warner v. Southwest Desert Images, LLC*, 218 Ariz. 121, 133, ¶ 33, 180 P.3d 986, 998 (App. 2008) (reviewing motion seeking to prohibit presentation of worker's compensation benefits at trial).

**¶23**        Before Deepwater was able to bid on a specific job with Badger Oil, it was required to negotiate and sign an MSA with Badger Oil. Deepwater representative Fennesy clarified the purpose of the MSA during his deposition, explaining that the agreement was not a contract for any particular job, but a preliminary outline of Badger Oil's requirements for all jobs: "Typically, you need [the MSA] in hand before you're even allowed to bid." The MSA included, *inter alia*, detailed requirements regarding the necessary insurance coverage.

¶24        In his email to Golucci on October 15, 2007, Fennesy attached an excerpt of the MSA consisting of the three pages outlining the insurance requirements.  But Deepwater did not provide Wells Fargo with the entire MSA itself.  Because a full copy of the MSA had not yet been disclosed, on December 23, 2011, Wells Fargo filed a motion in limine to prohibit any reference to the MSA at trial.  On January 13, 2012, Deepwater produced an unsigned copy of a generic Badger Oil MSA.  On January 18, 2012, it filed a supplemental response to Well Fargo's motion and included an alternative motion for relief under Arizona Rule of Civil Procedure 37(c).  Deepwater finally disclosed a copy of the original, signed MSA on January 19, 2012.

¶25        Assuming that the MSA was not produced in a timely manner, Wells Fargo cannot successfully claim prejudice by any untimely disclosure.  Wells Fargo asserts that the late disclosure was prejudicial because it prevented Wells Fargo from learning about an already-existing "material[ ] default" of the MSA: that Deepwater had allowed its insurance coverage to expire in September 2007.  Wells Fargo contends that if it had received the entire MSA in its possession more promptly, it could have conducted further discovery and investigation into this "potentially dispositive information."  This is not persuasive, however, because the terms outlining the material default Wells Fargo identifies are found in the section on requirements for insurance—the same section included in the three-page excerpt sent to Golucci in October 2007.  As such, Wells Fargo had the pertinent information in its possession at all times relevant to these proceedings.

¶26        In addition, Wells Fargo admitted that it purposefully delayed raising the issue of non-disclosure as a part of its procedural strategy.  When asked why the issue was not raised earlier in the litigation, Wells Fargo responded:

> Because we opted not to raise it in that fashion I guess is the way to put it. We—you know, we've asked for it. They've provided their response. You know, okay. I mean, we—I think that's our choice from a procedural standpoint that we want to proceed with a motion to compel, which we decided not to. And instead to raise it in a limine fashion to limine it out because we don't have the full document.

¶27        For these reasons, Wells Fargo cannot demonstrate that it was prejudiced by the late disclosure of the Badger Oil MSA.  We conclude the

trial court did not abuse its discretion when it denied Wells Fargo's motion in limine.

## V.      Rule 59 Motion for New Trial

**¶28**          Next, Wells Fargo argues that the jury returned an excessive verdict, necessitating a new trial under Rule 59.  The jury's final verdict awarded Deepwater $1,134,442 in damages on its breach of contract and negligence claims.  Specifically, Wells Fargo argues that this verdict necessarily included the jury's speculation regarding Deepwater's lost future profits, contrary to Arizona law.

**¶29**          In its briefing, Wells Fargo asserts that Deepwater provided a reasonable basis for, at most, $521,769.48 in damages.[1]  Wells Fargo argues that the $1,134,442 verdict is unsupported by the evidence and must necessarily be based in substantial part on Deepwater's speculative claim for lost future profits.[2]  Wells Fargo further alleges that because Deepwater did not provide a reasonable basis for an award of lost future profits, the court erred in denying its motion for a new trial.

**¶30**          The grant or denial of a motion for new trial is within the "sound discretion of the trial court," and absent a clear abuse of discretion, we will not overturn its ruling.  *Adroit Supply Co. v. Elec. Mut. Liab. Ins. Co.*, 112 Ariz. 385, 389, 542 P.2d 810, 814 (1975).  A motion for new trial may be

---

[1] This figure represents the actual expenditures made in preparation for the cancelled Badger Oil contract ($177,269.48), lost profit on that contract ($130,950), lost profit from the second Badger Oil contract for which Deepwater's bid was denied ($53,550), and loss of business goodwill ($160,000).

[2] As a preliminary matter, Deepwater argues that Wells Fargo waived any argument that the evidence presented was insufficient to provide for an award of lost future profits when it allowed the jury to be instructed according to Contract 19 of the Revised Arizona Jury Instructions:  **"**If future lost profits are reasonably certain, any reasonable basis for determining the amount of the probable profits lost is acceptable.  However, the amount of lost profits cannot be based on conjecture or speculation."  We reject this waiver argument of Deepwater, however, because Wells Fargo's argument is that the verdict was based purely on speculation, rather than on reasonably certain proof regarding lost future profits.

granted when the jury's verdict is "excessive," the "result of passion or prejudice," or "not justified by the evidence or contrary to law." *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 55, ¶ 22, 961 P.2d 449, 453 (1998); Ariz. R. Civ. P. 59(a)(5), (7), (8).

**¶31** The strength of evidence necessary to prove lost future profit damages is dependent upon the circumstances of each individual case. *Short v. Riley*, 150 Ariz. 583, 586, 724 P.2d 1252, 1255 (App. 1986). In order to recover for lost future profits, a party must provide a "reasonably certain factual basis for computation" of those losses. *Rancho Pescado, Inc. v. Northwestern Mut. Life. Ins. Co.*, 140 Ariz. 174, 184, 680 P.2d 1235, 1245 (App. 1984). Calculation of lost future profit cannot be based on speculation, but requires a "reasonable basis in the evidence for the trier of fact to fix compensation when a dollar loss is claimed." *Nelson v. Cail*, 120 Ariz. 64, 67, 583 P.2d 1384, 1387 (App. 1978).

**¶32** Deepwater claims that the reasonable basis for a lost profits award comes from the testimony of Tom Fennesy, Deepwater's CEO. The testimony to which Deepwater points, however, is Fennesy's testimony regarding his goodwill valuation, not lost future profits.[3] Furthermore, any such testimony was speculative, based upon the projected capital expenditures of clients with whom Deepwater had a pre-existing MSA. The numbers estimated by Fennesy were also disproportionately high in comparison to Deepwater's past performance. *See Desert Palm Surgical Grp., PLC v. Petta*, 236 Ariz. 568, 584, ¶ 45, 343 P.3d 438, 454 (App. 2015) (setting aside a nearly $11 million verdict because it was unsupported by the evidence and shocking to the court's conscience); *Rancho Pescado, Inc.*, 140 Ariz. at 185, 680 P.2d at 1246 (rejecting a claim for lost future profits when projected production levels for the business in question were "inordinately high"). The Badger Oil contract, worth just under $300,000, was the largest job Deepwater had procured to date, yet Fennesy projected nearly $3.4 million in revenue for the year to follow.

**¶33** We conclude that the jury's verdict was excessive and not justified by the evidence in the record. Deepwater failed to present evidence sufficient to support a reasonable calculation of lost future profits. To the extent that the verdict may have represented damages for lost future profits, the damages award was necessarily based on speculation rather than a reasonably certain factual basis. The trial court erred, therefore,

---

[3] Using the data presented, Fennesy concluded that the total goodwill of the business was "roughly $160,000."

when it failed to grant Wells Fargo's motion for a new trial on damages. For these reasons, we vacate the denial of that motion and remand for a new trial on damages only. We do not perceive the liability and damages evidence to be inextricably interwoven nor do we conclude that the negligence verdict was the result of passion or prejudice. As a result, the negligence verdict and the allocation of fault (95 percent and five percent) are affirmed.

## VI.    Prejudgment Interest

¶34        Next, Wells Fargo argues that the trial court erred in awarding prejudgment interest at bifurcated rates. Because we vacate the judgment and remand to the trial court for a new trial on damages, we conclude it is premature for this court to analyze the availability of prejudgment interest or the applicable interest rate. Such issues are best addressed by the trial court upon remand. In our discretion, therefore, we decline to address Wells Fargo's argument on this issue.

## VII.    Attorney Fees in Superior Court

¶35        Finally, Wells Fargo argues that the trial court erred in denying attorney fees under A.R.S. § 12-341.01. Under this statute, a trial court has "broad discretion" to award attorney fees to the successful party, and we will not disturb its decision absent an abuse of that discretion. *Vortex Corp. v. Denkewicz*, 235 Ariz. 551, 562, ¶ 39, 334 P.3d 734, 745 (App. 2014). Additionally, a party who prevails by successfully defending against a contract claim, on the basis that no contract existed, is eligible for a discretionary award of fees under § 12-341.01. *See Rudinsky v. Harris*, 231 Ariz. 95, 101, ¶ 27, 290 P.3d 1218, 1224 (App. 2014).

¶36        Wells Fargo argues the court erred in denying attorney fees in favor of the individual broker, Greg Golucci. Golucci was dismissed from the case before the close of trial, and the jury was instructed that Golucci's individual actions were undertaken in the course and scope of his employment with Wells Fargo. The trial court determined that such a dismissal did not make Golucci a "prevailing" party entitled to attorney fees. Accordingly, it declined to award attorney fees to Wells Fargo on his behalf.

¶37        We discern no abuse of discretion in the trial court's denial of attorney fees. The court considered the totality of the circumstances and determined that Deepwater was "clearly" the prevailing party. Wells Fargo

12

claims that because Deepwater abandoned its claims against Golucci, the court should have awarded attorney fees on his behalf. *See, e.g.*, *Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, 155 P.3d 1090 (App. 2007) (determining that third party defendant prevailed in suit when original plaintiff abandoned the claims against him). The claims against Golucci were not abandoned as a practical matter, however. Instead, Wells Fargo agreed to assume liability for his actions. The court's refusal to award attorney fees to Wells Fargo for defending Golucci was not an abuse of discretion.

## VIII.  Attorney Fees and Costs on Appeal

¶38        Finally, both parties have requested awards of attorney fees on appeal under A.R.S. § 12-341.01. Both parties have prevailed on appeal on certain issues and been unsuccessful on certain issues. In our discretion, we decline to award attorney fees to either party. We conclude, however, that Wells Fargo is entitled to an award of statutory, taxable costs upon its compliance with Arizona Rule of Civil Procedure 21.

## CONCLUSION

¶39        For these reasons, we vacate the judgment of liability in favor of Deepwater on its breach of contract claim. We affirm the finding of liability and the allocations of fault on Deepwater's negligence claim. We vacate the damages awarded as unsupported by the evidence and remand to the trial court for a new trial on the issue of damages. We also vacate the court's award of prejudgment interest. We affirm the court's denial of attorney fees to Wells Fargo for defending Greg Golucci.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama