294 P.2d 375

Herb D. MOLLOHAN, Appellant,

v.

Alex C. CHRISTY, Appellee.

No. 5978.

Supreme Court of Arizona.

March 6, 1956.

Randall & Chatwin, Phoenix, for appellant.

Stockton & Karam and Earl E. Weeks, Phoenix, for appellee.

UDALL, Justice.

Appellee Alex C. Christy (plaintiff below) brought suit against appellant Herb D. Mollohan, seeking a money judgment for $1,968.85. (At the close of the trial the court permitted a trial amendment to correspond to the proof, by plaintiff increasing the amount sued for to $2,252.40.) From a cursory examination of the complaint it would at first appear it was for money had and received, but a closer inspection reveals that really it is an equitable action for an accounting. The case was tried to the court, sitting without a jury, and as no findings of fact were requested, none were made, which leaves us somewhat in the dark as to the precise views of the court on certain contested items of the accounting. The court entered judgment for the plaintiff and against the defendant for the principal sum of $2,199.40; however defendant had offered to stipulate that judgment be entered against him for $872.11, which leaves items in dispute aggregating $1,327.29. A motion for new trial on the grounds of: (1) newly discovered evidence and (2) the excessiveness of the judgment was made and denied. This timely appeal followed.

We shall hereafter refer to the parties by either the use of their surnames or as they appeared in the lower court, i. e., plaintiff or defendant.

The facts giving rise to this lawsuit may be briefly summarized as follows: About the year 1945 Christy had purchased some 10 acres of land lying north of Scottsdale from a Mr. Marsten at an agreed price of $4,200; a substantial down payment had been made and thereafter certain annual payments of principal and interest were met. The agreement between the parties had been placed of record and an escrow had been set up with a local title company handling the matter for collection. Late in the year 1950 or early in 1951, Christy was in real financial distress; he owed various parties in the Phoenix area and several notes at the Valley National Bank, on one of which Mollohan was a co-signer; he was badly in arrears on payments due under the Marsten contract and thereby stood to lose this property. It was at this crucial stage he returned to Phoenix and appealed to his friend Mollohan to "bail him out" by advancing some $2,463.19 to pay off the Marsten contract; to then take over the real estate, sell it, pay his obligations therefrom and remit the balance to him. Out of the goodness of his heart Mollohan agreed to do this. Christy gave a quitclaim deed to Marsten to avoid the forfeiture of his contract; Mollohan put up the cash to pay Marsten off in full and in return received from the latter a warranty deed for the realty. With the title in Mollohan's name the property was listed with certain realtors, and in February 1951 a purchaser in the person of one Shadegg was found and the property sold to him for a consideration of $6,500, plus a brokerage fee of $300 to a realtor. This transaction was placed in escrow with the same

title company and after the escrow expenses, including brokerage fee had been paid, the balance of the money received from the sale, aggregating $6,398.79, was paid by the title company directly to the Valley National Bank in order that the indebtedness due them from Christy might be liquidated. Mollohan stoutly maintains that on June 4, 1951 he forwarded by mail to Christy all papers received from the bank, viz.: copy of receipt given the bank by Mollohan, Christy's cancelled notes, insurance policies, assignments, etc.; included therein was a statement of account which he had prepared, coupled with his check for $872.11, being the balance which he claims was due Christy. The latter denies receiving anything but the check. Mollohan maintained his copy of the accounting had been taken by the F.B.I. and not returned to him; the result was that at the trial this 70-year-old defendant was compelled to testify practically wholly from memory.

Until this trouble arose the parties to the suit had been intimate friends of many years standing; both Christy and his daughter had at various times lived and boarded in the Mollohan home and on many previous occasions Mollohan had aided Christy when the latter was in need of funds, both by directly loaning him money and by becoming a co-signer of notes given by Christy to the bank. It had not been the practice of the parties to keep strict book accounts with one another.

In order to more clearly understand the situation herein presented it is first necessary that we inquire somewhat more fully into the nature of the action involved and its basic attributes. Defendant properly categorizes this lawsuit as "in the nature of a suit for an accounting (which) therefore sounds in equity". See: 1 C.J.S., Accounting, §§ 32–33. The essence of the right of action is the close interrelations between the parties, akin to a fiduciary status. The bases for such an action are succinctly set forth in the case of Reinhard v. Reinhard, Sup., 56 N.Y.S.2d 160, 161, wherein it is stated:

"'* * * Transactions between parties, which will warrant one in holding the other accountable for his acts, must possess the elements of agency and of a trust reposed, with respect to moneys or other property received. The defendant, in such an action, must appear to have been intrusted with property of the plaintiff and, in consequence to have become bound to reveal his dealings with it. * * * It is not, of course, essential to the right to an accounting that a legal partnership exist. If the persons stood in a mutual and confidential relation to each other, and had a joint interest in the result of an adventure, either may demand an accounting, with a view to ascertain the profit or loss and their respective rights.'"

Cf. Annotation—Accounting—Principal and Agent, 3 A.L.R.2d 1310, 1313. The

transactions between the parties here presents some aspects of agency and a trust. A characterization apt in every sense seems impossible; yet that should have been no barrier to a fair adjudication of the respective rights. The most obvious feature of the case is the mutual and confidential relationship between defendant and plaintiff which existed until the falling-out over the settlement of their vague and wholly ambiguous accounts. Plaintiff put his Arizona affairs in the hands of defendant in the confidence that he would settle matters to the best advantage. There is no question as to Christy's right to an accounting from Mollohan, and the burden was on the latter to support with competent evidence the disbursements made. The issue before the trial court was as to the amount due the plaintiff on this accounting. The court found this amount to be $2,199.-40.

On this appeal Mollohan, by appropriate assignments of error, is challenging the correctness of the court's disallowing him credit for two items. The first had to do with a claimed credit for $500 on the sale of the realty to Shadegg for $6,-500. Mollohan contended, and he introduced in evidence a memo in writing tending to substantiate him, that there was an oral agreement between the parties to the effect that for his services he might keep any sum received for the realty in excess of $6,000. Christy flatly denied any such oral agreement and repudiated in part the written memo. The trial court on this sharp conflict in the evidence elected to believe the plaintiff, which finding ties our hands on appeal irrespective of our own view as to the weight of the evidence. Richfield Oil Co. v. Estes, 55 Ariz. 81, 98 P.2d 851.

The second assignment was the court's refusal to give defendant credit for a promissory note in the sum of $624.18, claimed to have been given by Christy to Mollohan, which had been marked paid and assertedly returned to Christy along with the other papers. Mollohan's evidence as to this item was somewhat uncertain and indefinite, and there was no documentary evidence to support same. Christy denied the existence of such a note or that he owed Mollohan any such an indebtedness. On this conflicting evidence we are bound by the finding of the trial court.

Finally, defendant claims the court erred in granting plaintiff's motion for a trial amendment increasing the amount of his demand "for the reason that the clear and convincing evidence warranted the allowance of additional credits". Rule 15 (b), appearing as Section 21-449, A.C.A. 1939 (now Rule 15(b), Rules Civil Procedure, effective January 1, 1956), expressly authorizes amendments to conform to the evidence. We have repeatedly held that such amendments should be liberally allowed in the interests of justice and are within the discretion of the trial judge. Leigh v. Swartz, 74 Ariz. 108, 245 P.2d 262. There is no merit to this assignment.

The totally unfortunate aspect of this case is that more accurate records were not kept or presented by defendant. However, on the record before us, we are given no alternative.

Judgment affirmed.

LA PRADE, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.