244 P.3d 586

Michael DOOLEY, an unmarried man, individually, and/or derivatively on behalf of Corvallas Development Corporation, an Arizona corporation, Plaintiff/Counterdefendant/Appellant,

v.

William O'BRIEN and Kathleen O'Brien aka Kathleen Falkenberg, husband and wife, Defendants/Appellees,

and

Michael Fencl, a married man dealing with his sole and separate property, Defendant/Counterclaimant/Appellee.

No. 1 CA–CV 09–0595.

Court of Appeals of Arizona, Division 1, Department E.

Dec. 28, 2010.

Ogletree, Deakins, Nash, Smoak & Stewart, P.C. By L. Eric Dowell and Kerry S. Martin, Phoenix, Attorneys for Plaintiff/Counterdefendant/Appellant.

Burch & Cracchiolo, P.A. By Edwin D. Fleming and Jake D. Curtis And Melissa Iyer, Phoenix, Attorneys for Defendants/Appellees O'Brien.

Burch & Cracchiolo, P.A., By Daryl Manhart, Phoenix, Attorneys for Defendant/Counterclaimant/Appellee Fencl.

## OPINION

SWANN, Judge.

¶ 1 This case presents the question whether A.R.S. 12–341.01(A) authorizes the award of attorneys fees to the prevailing party in actions for breach of fiduciary duty, fraudulent conveyance, and accounting. We conclude that such claims are based on duties imposed by law, not by express or implied promises, and therefore do not "aris[e] out of a contract" within the meaning of the statute. Accordingly, we vacate the superior courts award of fees.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In the late 1980s, Michael Dooley ("Plaintiff") joined with Michael Fencl, William O'Brien and William's wife Kathleen O'Brien (aka Kathleen Falkenberg) ("Defendants") to develop Arizona real estate. In 1994 they formed Corvallas Development Corporation ("Corvallas"), an Arizona corporation, as a vehicle for investing in such ventures. Plaintiff owns 31.25% of Corvallas stock, Fencl owns 31.25%, and Kathleen O'Brien owns the remaining 37.5%. All three served on the corporation's board of directors, and William O'Brien served as a manager of Corvallas.

¶ 3 In April 1998, the parties began working together toward developing a Merrill Ranch property, purportedly for Corvallas. In mid–1999, however, the parties had a falling out and Defendants decided to develop the property without Plaintiff. To this end, Defendants conveyed the Merrill Ranch property to a newly formed limited liability company ("LLC") in which neither Plaintiff nor Corvallas was an investor. Around that time, Defendants had decided not to work with Plaintiff on Merrill Ranch or any other project.

¶ 4 Plaintiff commenced this action in September 1999. He asserted individual and derivative claims for breach of fiduciary duty (alleging misappropriation of a corporate opportunity), a claim for fraudulent conveyance concerning William O'Brien's interest in Merrill Ranch, and three claims for accounting regarding Corvallas and two of the parties' LLCs. Later, Plaintiff recorded a notice of lis pendens against the Merrill Ranch property. In response, Defendants conveyed the Merrill Ranch property to Corvallas so that the lis pendens would not interfere with sales of homes in the development.

¶ 5 In April 2004, the parties agreed to the appointment of a Special Master to perform an accounting of Corvallas and the LLCs involved in the dispute. The Special Master submitted his report in July 2007, and the court adopted it over Plaintiff's objections in September 2007.

¶ 6 In October 2007, Defendants moved for summary judgment. They argued that the breach of fiduciary duty and fraudulent conveyance claims were rendered moot by the transfer of the Merrill Ranch property to Corvallas, that the Special Master's report precluded any finding of misconduct by Defendants, and that Plaintiff could not prove any damages. Finally, Defendants argued the Special Master's report effectively accomplished the accountings that Plaintiff sought.[1] The court granted summary judgment in favor of Defendants on all but one claim and denied Plaintiff's cross-motions for summary judgment on all claims. The parties then agreed to dismiss all remaining claims and counterclaims with prejudice.

¶ 7 By that time, the O'Brien defendants had submitted a request for fees and costs of $248,944.02 under A.R.S §§ 12–341.01(A) and –349, and the Fencl defendants had joined the request seeking fees and costs of $136,292.93. Plaintiff argued that § 12–341.01(A) did not apply because the claims at issue did not arise "out of contract" within the meaning of A.R.S. § 12–341.01(A). After

---

1. Because the transfer of the Merrill Ranch property and the accountings achieved significant portions of the relief prayed for in Plaintiff's First Amended Complaint, the court was not compelled to treat Defendants as the successful parties. *See Fulton Homes Corp. v. BBP Concrete,* 214 Ariz. 566, 569, ¶ 9, 155 P.3d 1090, 1093 (App.2007) (trial court has discretion to determine who is the prevailing party); *Schweiger v. China Doll Rest., Inc.,* 138 Ariz. 183, 189, 673 P.2d 927, 933 (App.1983) ("Where a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories."). Because this issue was not raised on appeal, we do not address it further.

hearing oral arguments, the court granted the Defendants' applications for attorney's fees in an unsigned minute entry.

¶ 8 Plaintiff filed a motion for reconsideration of the grant of attorney's fees and requested that the court issue findings of fact and conclusions of law to support the award.[2] The court adopted Defendants' proposed findings of fact and conclusions of law, and entered judgment for Defendants. Plaintiff timely appeals. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

### STANDARD OF REVIEW

¶ 9 "[I]nterpretation and application of the attorney fee statute present questions of law subject to *de novo* review." *Ariz. Tile, L.L.C. v. Berger*, 223 Ariz. 491, 498–99, ¶ 35, 224 P.3d 988, 995–96 (App.2010). If attorney's fees are available under the statute, we review the award for abuse of discretion. *Id.* at 498, ¶ 35, 224 P.3d at 995.

### DISCUSSION

### I. A CLAIM DOES NOT "ARISE OUT OF CONTRACT" WHEN THE RELEVANT DUTY IS NOT CREATED BY A PROMISE.

¶ 10 The threshold, and ultimately dispositive, question in this case is whether Plaintiff's claims arose out of contract within the meaning of § 12–341.01(A). The statute provides: "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." "In interpreting statutes, our central goal 'is to ascertain and give effect to the legislature's intent.'" *Yarbrough v. Montoya–Paez*, 214 Ariz. 1, 5, ¶ 12, 147 P.3d 755, 759 (App.2006) (citing *Washburn v. Pima County*, 206 Ariz. 571, 575, ¶ 9, 81 P.3d 1030, 1034 (App.2003)). Here, the legislature chose not to use more restrictive language, such as "an action for breach of contract," or more expansive language, such as "an action between parties to a contract." And as our supreme court held, "[t]he legislature clearly did not intend that every tort case would be

eligible for an award of fees whenever the parties had some sort of contractual relationship or ingenious counsel could find authority for an implied-in-law contractual claim." *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 524, 747 P.2d 1218, 1223 (1987). In *Barmat,* the court approved the view expressed in *Lewin v. Miller Wagner & Co., Ltd.*, 151 Ariz. 29, 725 P.2d 736 (App. 1986), that "where the implied contract does no more than place the parties in a relationship in which the law then imposes certain duties recognized by public policy, the gravamen of the subsequent action for breach is tort, not contract." *Barmat,* 155 Ariz. at 523, 747 P.2d at 1222.

¶ 11 Though the precise question before us has never expressly been decided, it is clear that fees may not be awarded in every case that merely involves or relates to a contract. In *Barmat,* the court distinguished contractual duties created by the express or implied assent of the parties and those duties " 'created by the law without regard to expressions of assent.' " *Id.* at 521, 747 P.2d at 1220 (quoting 1 Arthur L. Corbin, Corbin on Contracts § 19, at 44 (1963)). And as this court noted in *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15, ¶ 27, 6 P.3d 315, 320 (App. 2000), "[t]he existence of a contract that merely puts the parties within tortious striking range of each other does not convert ensuing torts into contract claims." Put differently, "[w]hen the duty breached is one implied by law based on the relationship of the parties, that claim sounds fundamentally in tort, not contract." *Id.* at 15, ¶ 27, 6 P.3d at 320.

¶ 12 On the other hand, when "the duty breached is not imposed by law, but is a duty created by the contractual relationship, and would not exist 'but for' the contract, then breach of either express covenants or those necessarily implied from them sounds in contract." *Barmat,* 155 Ariz. at 523, 747 P.2d at 1222. To make this determination, "the court should look to the fundamental

---

**2.** Though the court was free to express the reasons for its order at the request of the parties, it was not required to do so. Findings of fact and

conclusions of law are required only when a party requests them before a trial to the court or advisory jury. Ariz. R. Civ. P. 52(a).

nature of the action rather than the mere form of the pleadings." *Ramsey*, 198 Ariz. at 15, ¶ 27, 6 P.3d at 320.

¶ 13 This case involves three basic claims: breach of fiduciary duty, fraudulent conveyance, and accounting. We address each claim in turn.

A. *A Claim for Breach of Fiduciary Duty/Misappropriation of Corporate Opportunity Does Not Arise Out of Contract.*

¶ 14 Plaintiff alleged that Defendants breached their fiduciary duties as directors and controlling shareholders of Corvallas by pursuing for themselves the Merrill Ranch development opportunity that Corvallas had been preparing to pursue. Misappropriation of a corporate opportunity occurs when a "director has a specific duty to act in regard to the particular matter as a representative of the company" and breaches that duty. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 122, 412 P.2d 47, 57 (1966).

¶ 15 Here, the relationship between the parties is that of directors and officers of a corporation to its shareholders. The parties do not dispute that a contract created that relationship.³ But "[i]n Arizona a director of a corporation owes a fiduciary duty to the corporation and its stockholders. This duty is in the nature of a trust relationship requiring a high degree of care on the part of the director." *Atkinson v. Marquart*, 112 Ariz. 304, 306, 541 P.2d 556, 558 (1975) (citations omitted); *accord Kenton v. Wood*, 56 Ariz. 325, 331, 107 P.2d 380, 383 (1940) ("[D]irectors are trustees for the benefit of the stockholders.").⁴

¶ 16 In support of their contention that this case arises out of contract, Defendants argue that they had no duty to preserve development opportunities for Corvallas absent an alleged oral agreement with Plaintiff,

and that they were free to pursue real estate developments outside Corvallas. But Defendants' argument goes to the merits of Plaintiff's claim, not to its fundamental nature: Plaintiff did not sue for breach of any alleged oral agreement, and the validity and terms of such an agreement were not necessary to the disposition of the claim. *Compare Asphalt Eng'rs, Inc. v. Galusha*, 160 Ariz. 134, 138, 770 P.2d 1180, 1184 (App.1989) (holding that a breach of duties that a fiduciary contractually assumes beyond those duties imposed by law is considered to arise out of contract). Further, a defense based on the absence of a contractual duty cannot transform a tort claim into one arising out of contract. *See Benjamin v. Gear Roller Hockey Equip., Inc.*, 198 Ariz. 462, 466, ¶ 23, 11 P.3d 421, 425 (App.2000) (holding a defense based on a contractual waiver and release of liability did not permit the award of attorney's fees in a negligence action), *abrogated on other grounds by Phelps v. Firebird Raceway, Inc.*, 210 Ariz. 403, 410–11, ¶ 32, 111 P.3d 1003, 1010–11 (2005). The legislature did not intend that every tort claim could be transformed into a claim "arising out of contract" by a defendant's contention that *no* contractual duty existed between the parties.

¶ 17 In *In re Naarden Trust*, we held that a trustee who successfully defended against a breach of fiduciary duty claim could not recover attorney's fees under § 12–341.01(A). 195 Ariz. 526, 530, ¶ 18, 990 P.2d 1085, 1089 (App.1999). In *Naarden*, an express agreement created the trust. *Id.* at 528, ¶ 9, 990 P.2d at 1087. Nonetheless, we concluded:

> the duties of a trustee stem from duties implied by law because of the relationships created by the trust, and that such relationships are not contractual. Therefore, suits that arise out of a trust relationship are not suits arising out of a contract for purposes of A.R.S. section 12–341.01(A).

---

3. Apart from the organic documents that formed the parties' entities, the record does not reveal any agreements between them that governed their relationship.

4. The classic formulation of the duty is set forth in *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (1928): "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."

*Id.* at 530, ¶ 18, 990 P.2d at 1089.[5]

 ¶ 18 Like the duties of the trustee in *Naarden,* and unlike fiduciary duties expressly created by contract, the duties of a director or officer of a corporation are implied by law. Indeed, these fiduciary obligations can apply even to creditors when a corporation enters the zone of insolvency, without regard to the terms in the underlying contracts. *Dawson v. Withycombe,* 216 Ariz. 84, 107, ¶ 71, 163 P.3d 1034, 1057 (App. 2007). As in *Ramsey,* the contract forming the corporation in this case merely placed the directors and officers "within tortious striking range" of shareholders and in some circumstances creditors. 198 Ariz. at 15, ¶ 27, 6 P.3d at 315. The mere reference to a contract in a complaint does not make the action one "arising out of contract."

¶ 19 We therefore conclude that the fundamental nature of Plaintiff's claim is the enforcement of the fiduciary duties to which Defendants were subject as a matter of law by virtue of their status as directors or officers of a corporation. When those duties are not accompanied by a specific contractual obligation, the claim does not "arise out of contract."

### B. *A Claim For Fraudulent Conveyance Does Not Arise Out of Contract.*

 ¶ 20 An action for fraudulent conveyance must arise under Arizona's Uniform Fraudulent Transfer Act, A.R.S. §§ 44–1001 through –1010, which has displaced similar common law actions. *Moore v. Browning,* 203 Ariz. 102, 108, ¶ 20, 50 P.3d 852, 858 (App.2002). Section 44–1004(A) reads in pertinent part:

A. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor ... if the debtor made the transfer or incurred the obligation under any of the following:

. . . .

2. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(b) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Plaintiff alleged that Defendant O'Brien transferred his interest in Merrill Ranch to Defendant Falkenberg with the intent to "hinder, delay and defraud O'Brien's creditors," and for less than a reasonably equivalent value while O'Brien was insolvent or would become so because of the transfer. Neither party disputes that this is the basis of this claim. Because the basis of the action is a duty imposed by law, and no enforcement of a contract was required, we conclude the fundamental nature of the claim is one that does not arise out of contract.[6]

### C. *Actions for Accounting Do Not Arise Out of Contract.*

 ¶ 21 Plaintiff sought an accounting of three business organizations and distribution of what, if anything, that accounting revealed was due him. Defendants' successful motion for summary judgment argued

---

**5.** In earlier cases involving breach of a fiduciary duty implied by law, this court approved fee awards under A.R.S. § 12–341.01(A). *See Trebilcox v. Brown & Bain, P.A.,* 133 Ariz. 588, 653 P.2d 45 (App.1982); *Lake Havasu Cmty. Hosp., Inc. v. Ariz. Title Ins. & Trust Co.,* 141 Ariz. 363, 687 P.2d 371 (App.1984). But the holding that § 12–341.01(A) applied to these professional malpractice claims was explicitly rejected in *Barmat.* 155 Ariz. at 524, 747 P.2d at 1223. In *Jerman v. O'Leary,* this court held that general partners of a limited partnership who successfully defended from a claim of breach of fiduciary duty could be awarded attorney's fees under § 12–341.01(A). 145 Ariz. 397, 403, 701 P.2d 1205, 1211 (App.1985). That case not only predated *Barmat,* but the explicit terms of a partnership agreement were essential to the result.

**6.** Defendants cite *Marcus v. Fox,* 150 Ariz. 333, 723 P.2d 682 (1986) for the proposition that a claim may allege fraud yet still arise in contract. But the fraudulent inducement claim in *Marcus* "concern[ed] the validity of the contract." *Id.* at 336, 723 P.2d at 685. Though it is true that the presence of a tort claim does not defeat the eligibility for fees, the absence of a dispute over promissory rights does so.

only that this accounting had been accomplished by the Special Master's report, except for the winding up of Corvallas. Parties to a fiduciary relationship have a right to an accounting. *Divizio v. Kewin Enters., Inc.,* 136 Ariz. 476, 479, 666 P.2d 1085, 1088 (App. 1983). To be subject to court-ordered accounting, a defendant "'must appear to have been intrusted with property of the plaintiff and, in consequence to have become bound to reveal his dealings with it.'" *Mollohan v. Christy,* 80 Ariz. 141, 143, 294 P.2d 375, 376–77 (1956) (quoting *Reinhard v. Reinhard,* 56 N.Y.S.2d 160, 161–62 (N.Y.Sup.Ct.1945)).

¶ 22 Generally, shareholders have "no right, title or interest in the corporate property," *Riffle v. Robert L. Parker Co.,* 19 Ariz.App. 100, 106, 505 P.2d 268, 274 (1973), and may not maintain a direct action for an accounting. *See Albers v. Edelson Tech. Partners L.P.,* 201 Ariz. 47, 52, ¶¶ 17–18, 31 P.3d 821, 826 (App.2001). But in *Johnson v. Gilbert,* 127 Ariz. 410, 621 P.2d 916 (App. 1980), the court recognized:

[b]ecause the corporation was closely held by only the plaintiffs and defendants, they operated more as partners than in strict compliance with the corporate form. In such circumstances, the plaintiffs had standing, both derivatively and directly, to sue ... for an accounting.

*Id.* at 412, 621 P.2d at 918, *overruled on other grounds by Turley v. Ethington,* 213 Ariz. 640, 647, ¶ 27, 146 P.3d 1282, 1289 (App.2006). While Arizona created the statutory close corporation in 1976, A.R.S. §§ 10–1801 through –1818 (added as § 10–201 *et seq.* by 1976 Ariz. Sess. Laws, ch. 62, § 1 (2nd Reg. Sess.); renumbered as §§ 10–1801 through –1818 by 1994 Ariz. Sess. Laws, ch. 233, §§ 8, 17 (2nd Reg. Sess.)), the statutes did not displace the common-law doctrines applicable to closely-held corporations. *See Albers,* 201 Ariz. at 56, ¶ 38, 31 P.3d at 830. An accounting under these doctrines was precisely the relief sought by Plaintiff, and it was available to him as a matter of law without the need for a contract.

## CONCLUSION

¶ 23 Because we find that none of Plaintiff's undismissed claims arose out of contract within the meaning of § 12–341.01(A), we vacate the trial court's award of attorney's fees to Defendants under that statute and remand for further proceedings consistent with this opinion.

CONCURRING: PHILIP HALL, Presiding Judge and SHELDON H. WEISBERG, Judge.