NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CHRISTOPHER G. LINSCOTT, *Plaintiff/Appellee,*

*v.*

THOMAS E. HESHION, *Defendant/Appellant.*

No. 1 CA-CV 25-0223

FILED 12-31-2025

Appeal from the Superior Court in Maricopa County
Nos.  CV2020-003915
CV2021-011133
CV2024-022023
The Honorable Randall Warner, Judge
The Honorable Jennifer C. Ryan-Touhill, Judge

**AFFIRMED IN PART,  VACATED IN PART, AND
REMANDED WITH DIRECTIONS**

COUNSEL

Mesch Clark Rothschild, Tucson
By Frederick J. Petersen
*Counsel for Plaintiff/Appellee*

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Brian Y. Furuya joined.

---

**K I L E Y**, Judge:

¶1 The superior court found that Thomas Heshion recorded a groundless lis pendens against real property owned by 1881 Preserve, LLC ("1881 Preserve"), and awarded attorney fees, costs, and damages to 1881 Preserve under A.R.S. § 33-420(A). We affirm the determination of Heshion's liability under A.R.S. § 33-420(A), vacate the damage award in part, and remand for entry of a new damage award.

**FACTS AND PROCEDURAL HISTORY**

¶2 Viewed in the requisite light most favorable to sustaining the trial court's ruling, *see Bennett v. Baxter Group, Inc.*, 223 Ariz. 414, 422, ¶ 31 (App. 2010), the evidence shows that the predecessor to 1881 Preserve was formed in August 2017 in connection with a planned project (the "Project") to develop land near the Dragoon Mountains in southeastern Arizona for equestrian and other recreational purposes. At some point in the following year, Heshion became a manager of 1881 Preserve's predecessor.

¶3 In 2018, Heshion entered into a contract to purchase 7,060 acres of land in Cochise County (the "Property") from Silverstone Investments, L.L.P., ("Silverstone") for $5.4 million, subject to certain offsets that could reduce the purchase price. After negotiations and, evidently, some disputes between the contracting parties, the final agreement required Silverstone to make an additional payment to Heshion of $400,000 when the sale closed. In 2019, Heshion assigned his contractual right to purchase the Property — but not his right to the separate $400,000 payment — to 1881 Preserve's predecessor.

¶4 Meanwhile, 1881 Preserve or its predecessor leased 14,000 acres of grazing land from the State and acquired the right to purchase 160 acres from certain sellers, referred to in this case as the "Youngs."

¶5 In mid-2019, 1881 Preserve's predecessor adopted articles of organization that named Daniel Fischl and Doug Frost as managers in addition to Heshion. Shortly thereafter, the entity's members voted to

remove Heshion as a manager, and the entity changed its name to 1881 Preserve.

**¶6**    In 2020, 1881 Preserve sued Heshion and Silverstone in superior court in Maricopa County, alleging irregularities in their negotiations for the pending sale of the Property. *See 1881 Preserve LLC v. Thomas E. Heshion et al.*, Maricopa County Superior Court Case No. CV2020-003915 (the "2020 case"). Among other things, 1881 Preserve alleged that Heshion breached a fiduciary duty by failing to disclose Silverstone's agreement to pay him $400,000 at closing. In addition to claiming damages, 1881 Preserve sought a declaration that it was entitled to the $400,000 fee.

**¶7**    Heshion asserted counterclaims against 1881 Preserve, Fischl, Frost, and others, challenging his removal as a manager and asserting that 1881 Preserve and its members improperly failed to recognize his ownership interest in the entity. In addition to seeking damages for the value of his services to the entity and for expenses he incurred on its behalf, Heshion sought declarations confirming his status as both a member and manager of 1881 Preserve. Heshion did not, however, assert any claim to rescind his transfer of the Property to 1881 Preserve, or any other claim of title to the Property itself.

**¶8**    1881 Preserve closed on the purchase of the Property in March 2021 for a purchase price of $5.4 million.

**¶9**    In 2021, Heshion filed a separate suit in the Maricopa County Superior Court against the members and managers of 1881 Preserve as well as certain other individuals. *See Thomas E. Heshion v. Daniel Fischl et al.*, Maricopa County Superior Court Case No. CV2021-011133 (the "2021 case"). In his complaint, Heshion alleged, as he had in the 2020 case, that members of 1881 Preserve improperly deprived him of his ownership interest in the company and wrongfully removed him as a manager. Heshion asserted, *inter alia*, contract and fraud-based claims for damages resulting from the loss of his ownership interest and for a declaration confirming his status as a member and manager of 1881 Preserve. He did not assert any claim of title to the Property itself.

**¶10**    The 2021 case and the 2020 case were subsequently consolidated.[1]

---

[1] In 2024, a third party's unsuccessful efforts to purchase the Property led to another suit against 1881 Preserve, *see Dragoons of Tombstone Acquisitions*

¶11 1881 Preserve owed payments to the Youngs under the contract to buy 160 acres of land from them, as well as payments on several promissory notes to individuals referred to in this case as the "Cowans." With insufficient liquid assets to meet these and other expenses, 1881 Preserve entered into a contract in 2022 to sell 115 acres of the Property, referred to as the "RV Parcel," to ZenMoose Capital, LLC ("ZenMoose") for approximately $2.5 million. The sale of the RV Parcel was set to close in November 2022.

¶12 Heshion recorded a lis pendens in October 2022 in Cochise County, Arizona against most of the Property, as well as against the 14,000 acres of grazing land that 1881 Preserve leased from the State. In the lis pendens, Heshion described his claims in the pending litigation as follows:

> Take notice that Thomas Heshion has filed in [superior court] a civil action . . . against the above referenced Defendants claiming an equitable right *affecting the ownership of a limited liability company owning the following described real estate . . .*
>
> That said suit is now pending and the *purpose of the same is to declare the transfers of the ownership of interests* in 1881 Preserve LLC . . . to be fraudulent and void, *and to quiet title in Plaintiff* and to recover damages from the Defendants fraudulently converting the Plaintiff's interest therein (emphasis added).

¶13 1881 Preserve filed a special action in the superior court in Cochise County, seeking an order under A.R.S. § 33-420 releasing the lis pendens. *See 1881 Preserve, LLC v. Thomas E. Heshion et al.*, Cochise County Superior Court Case No. CV202200532 (the "2022 case"). After a hearing in January 2023, the court denied 1881 Preserve's request to order the release of the lis pendens, determining that the special action should be addressed as part of the consolidated case in Maricopa County.

¶14 Meanwhile, certain non-managing members of 1881 Preserve who were parties to the consolidated case in Maricopa County requested the appointment of a receiver for 1881 Preserve, asserting that the "struggle over the control and management" of the entity was "putting" its "value . . . at risk."

---

*LLC v. 1881 Preserve, LLC*, Maricopa County Superior Court Case No. CV2024-022023 (the "2024 case"), which was also consolidated with the 2021 case and the 2020 case. Because the claims in the 2024 case do not relate to Heshion's appeal, we do not address this aspect of the litigation.

¶15 In February 2023, the court appointed Christopher G. Linscott as receiver ("Linscott" or the "Receiver") for 1881 Preserve, with authority to "operate and manage" the receivership estate and "[e]nter into contracts" on its behalf. The following month, the Receiver filed an "Emergency Motion to Authorize Sale of Real Property Free and Clear of Liens, Claims, Interests and Encumbrances" in order to allow the sale of the RV Parcel to ZenMoose to proceed. "1881 Preserve has now due or past due accounts payable" and "tax liabilities," the Receiver asserted, and "lacks liquid assets sufficient to pay [those] obligations[.]" The Receiver further represented that although "the scheduled [c]losing date" for the sale of the RV Parcel had passed, ZenMoose "confirmed" that it was "ready and willing to proceed to [c]losing on the contract terms." The Receiver asked the court to approve the sale of the RV Parcel to ZenMoose "free and clear of all liens, claims, and encumbrances," including "the Heshion [l]is [p]endens."

¶16 Heshion filed a written objection to the Receiver's motion. He later withdrew his objection, however, when the parties stipulated that the sale of the RV Parcel could proceed "free and clear of the [l]is [p]endens [Heshion] recorded" without prejudice to the parties' "right to litigate the validity and enforceability" of the lis pendens in subsequent proceedings. In May 2023, the court entered an order authorizing the sale of the RV Parcel to ZenMoose.

¶17 That same month, the Receiver moved for an order "declar[ing] the [lis pendens] groundless and order[ing] that [it] be released." Noting that A.R.S. § 12-1191(A) authorizes the recording of a lis pendens only in an action affecting title to real property, the Receiver argued that the statute did not apply here because Heshion never asserted a claim for relief "with regard to ownership of the *real property* owned by 1881 Preserve." On the contrary, he argued, the consolidated case constituted a "fight for control of 1881 Preserve" itself.

¶18 Heshion, who by now was representing himself, filed no response to the Receiver's motion for an order to release the lis pendens as groundless, nor did he express any objection to it at a hearing on the motion in June 2023. The court granted the Receiver's motion and ordered the lis pendens released.

¶19 After the court entered its May 2023 order authorizing the sale of the RV Parcel free and clear of the lis pendens, a new closing date was set in August 2023. The sale did not, however, go through. As the Receiver later reported in a status update to the court, the sale was "not currently proceeding" because ZenMoose representatives "indicated they [were]

reluctant to move forward" with the purchase "without some assurances" that the Project "would proceed in a similar way to how it was initially envisioned[.]"

¶20 In January 2024, the Receiver moved for an award of damages under Section 33-420 for Heshion's "frivolous and wrongful" recording of the lis pendens. Asserting that the sale of the RV Parcel for $2.5 million "was essential" to enable 1881 Preserve "to secure capital to meet [its] financial obligations as they came due[,]" the Receiver asserted that the wrongful recording of the lis pendens caused the "indefinite postponement of the RV Parcel sale," which, in turn, caused 1881 Preserve to "default[] on numerous obligations," including payment of property taxes and sums owed to the Youngs and the Cowans. According to the Receiver, "[d]amages for default interest and late fees" that are attributed to the failure of the sale of the RV Parcel "total[ed] approximately $105,400.00." The Receiver also asserted that the receivership estate was entitled to recover attorney fees and costs incurred as a result of the lis pendens, as well as damages from the loss of a sales opportunity.

¶21 In opposition to the Receiver's motion, Heshion asserted, *inter alia*, that no damages were warranted because the court had "never substantively adjudicated the merits of" the lis pendens and that, in any event, he neither knew nor had reason to know that the lis pendens was invalid when he recorded it. Heshion also moved for reconsideration of the June 2023 order releasing the lis pendens. Asserting that his former counsel withdrew from the case without filing a response to the Receiver's motion to release the lis pendens, he asked that the court vacate the June 2023 order and "allow [him] to respond[.]"

¶22 The court denied Heshion's motion for reconsideration, determining that it "already decided" that "the lis pendens was invalid" and saw "[n]o basis" to "reopen" the issue. The court rejected Heshion's attempt to shift blame to his attorney for failing to respond to the Receiver's motion, noting that Heshion, who was self-represented at the time, was present at the June 2023 hearing at which the motion was addressed and "made no oral objection" to it. The court further determined that because Heshion "did not request judicial relief" relating to title to the Property, he "knew or should have known his lis pendens was groundless."

¶23 After negotiating with various prospective purchasers, the Receiver entered into an agreement for 1881 Preserve to sell the Property, as well as 1881 Preserve's rights to the 14,000 acres of leased land and the 160 acres owned by the Youngs, to a third party for $4.7 million. *See*

6

*Dragoons of Tombstone Acquisitions LLC v. 1881 Preserve, LLC*, 1 CA-CV 24-0826, 2025 WL 2113927 at *2, ¶ 8 (Ariz. App. July 29, 2025). The court approved the agreement in August 2024, and the record indicates that the sale later closed according to the contract terms.

**¶24** In December 2024, the superior court conducted an evidentiary hearing on the Receiver's request for damages resulting from the wrongful recording of the groundless lis pendens. Heshion represented himself at the hearing.

**¶25** Linscott testified that Heshion's lis pendens "effectively stopped a sale or an agreement for sale" of the RV Parcel by clouding title to the Property, which prevented 1881 Preserve from raising capital needed to pay its ongoing financial obligations. In his testimony, Heshion denied that the lis pendens was groundless or that he filed it in bad faith. He nonetheless did not contest an award of "damages" under A.R.S. § 33-420 "for the expenses to address the lis pendens," but denied that the lis pendens caused the RV Parcel sale to fall through or that he could properly be assessed "any damages . . . on that issue."

**¶26** Linscott presented exhibits, in the form of billing records from 1881 Preserve's attorneys and his own billing records, reflecting that 1881 Preserve incurred attorney fees of $108,097.67 and fees to the Receiver of $44,452.60, for a total of $152,550.27, in connection with their efforts to have the lis pendens released. Although Heshion responded that he was "not arguing with" the Receiver's entitlement to fees "to address the lis pendens[,]" he argued the amount of the claimed fees was unreasonable. The attorney fees incurred in the two court hearings to secure the removal of the lis pendens, he insisted, "should not be over $10,000 a piece."

**¶27** Linscott testified that 1881 Preserve incurred damages when it defaulted on certain obligations because the influx of cash from the sale of the RV Parcel never materialized. Linscott explained that 1881 Preserve was unable to make payments due to the Youngs towards the purchase of their land or payments on the notes to the Cowans, and so had to agree to make forbearance payments to them in an amount of almost $90,000. Further, Linscott testified that 1881 Preserve was unable to pay property taxes on the Property when due and so incurred a $5,443.73 interest charge.

**¶28** Linscott then testified about lost profits from the abortive sale of the RV Parcel to ZenMoose. After the lis pendens was released, he testified, ZenMoose decided, in "either March or April of '23," that it was unwilling to "go forward" with the sale. Consequently, he testified, he put

the Property on the market again, with disappointing results. 1881 Preserve's precarious financial position "forced" Linscott to sell the Property, along with 1881 Preserve's rights to the 14,000 acres of leased land and the Youngs' 160 acres, for $4.7 million, a sale that he described as "a liquidation type scenario."

¶29 An exhibit that Linscott offered at the hearing identified the damages claimed for the loss of the RV Parcel sale at $2,475,410. Linscott explained that he calculated this figure based on "the differential" between the per-acre sales price of the RV Parcel under the contract with ZenMoose (*i.e.*, $2.5 million ÷ 115 acres = $21,739 per acre) and the $666 per-acre sales price under the sale the court approved in August 2024 ($4.7 million ÷ 7,060 acres = $666 per acre). Because, Linscott indicated, 1881 Preserve received only $76,590 (115 acres x $666 per acre = $76,590) for the 115 acres that it could have sold to ZenMoose for $2.5 million in November 2022, Linscott deducted $76,590 from $2.5 million and labeled the difference, $2,475,410, as damages from the lost sale to ZenMoose.

¶30 When asked if he was "asking the Court to assess $2.4 million against [Heshion]," Linscott admitted that "whether that whole 2.475 million is actually a damage . . . is . . . debatable." He further admitted that the lis pendens alone did not cause ZenMoose to back out of the deal. Instead, he testified, ZenMoose representatives "weren't interested" in going forward with the sale "due to the dysfunction within [1881 Preserve]," including "the fighting and lawsuits amongst the members[,]" "issues with the receivership[,]" and a lack of "funds to operate going forward." "[B]ecause of the situation 1881 [Preserve] was in," Linscott stated, ZenMoose "didn't want to go forward" with the purchase of the RV Parcel.

¶31 In his testimony, Heshion asserted that he should be assessed "no damages . . . based on the loss of the [RV Parcel] sale[,]" arguing that Linscott failed to "prov[e] . . . that the loss of that sale was caused by the lis pendens."

¶32 On December 20, 2024, the court entered its award of damages to 1881 Preserve. First, the court awarded 1881 Preserve the sum of $152,550.27 for its attorney fees and costs, as well as the Receiver's fees, arising out of efforts to secure the removal of the lis pendens.

¶33 Next, the court found that Heshion "stipulated" to the damages the Receiver claimed for 1881 Preserve's failure to timely pay its debts. Finding that the receivership estate incurred interest of $5,443.73 on

the Property's unpaid property taxes and costs of $89,940.01 relating to its forbearance agreements with the Youngs and the Cowans, the court trebled these sums under A.R.S. § 33-420(A) and awarded the receivership estate a total of $286,151.22 ($5,443.73 + $89,940.01 x 3 = $286,151.22).

**¶34** Finally, the court awarded 1881 Preserve damages of $2,475,410 as lost profits from the RV Parcel sale.

**¶35** The superior court entered judgment in January 2025, and Heshion timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**I.** **The superior court did not err in determining that the lis pendens was groundless.**

**¶36** Heshion argues that the lis pendens was not groundless because the underlying litigation involved a dispute over ownership of 1881 Preserve, which, he contends, necessarily would "affect title to [1881 Preserve's] real property — its only meaningful asset[.]"

**¶37** A.R.S. § 12-1191 permits the filing of a lis pendens when the action is one "affecting title to real property[.]" A lawsuit involving "adjudication of rights incident to title to real property" affects title to real property. *Tucson Ests., Inc., v. Superior Court In and For Pima County*, 151 Ariz. 600, 605 (App. 1986). A lis pendens is essentially a "statutorily authorized republication of pleadings in a judicial proceeding" that provides "constructive notice of all that is claimed in the action." *Stewart v. Fahey*, 14 Ariz. App. 149, 151 (1971) (citation omitted). A lis pendens is groundless if the recording party's claim "that the underlying action is one affecting title to real property has no arguable basis or is not supported by any credible evidence." *Evergreen West, Inc. v. Boyd*, 167 Ariz. 614, 621 (App. 1991). When reviewing a determination that a lis pendens was groundless, we review "the trial court's legal determinations de novo" but "defer to the court's factual findings unless they are clearly erroneous." *Westbrook Rental LLC v. Goodman*, __ Ariz. __, __, ¶ 12, 576 P.3d 704, 708 (App. 2025).

**¶38** The Receiver argues that Heshion waived his argument in support of the validity of the lis pendens by failing to raise it below. In response, Heshion maintains that he did not waive this argument because the parties expressly reserved the right to contest the validity of the lis pendens when they stipulated in April 2023 to allow the RV Parcel sale to proceed "free and clear" of the lis pendens.

¶39 Although Heshion is correct that he reserved his right to litigate the merits of the lis pendens when the parties stipulated in May 2023 to allow the sale of the RV Parcel to proceed free and clear of the lis pendens, the merits of the lis pendens were later adjudicated when the court granted the Receiver's January 2024 motion for an order releasing it. When the Receiver argued, in the January 2024 motion, that the lis pendens was groundless, Heshion had the opportunity to respond in opposition to that claim. He did not. Heshion's attempt to blame his former attorney for his failure to respond to the Receiver's motion to release the lis pendens as groundless is unavailing in light of the undisputed fact that Heshion was both self-represented and personally present at the June 2023 hearing and did not object to the motion before the court granted it. Heshion's unsuccessful attempt to defend the merits of the lis pendens in a subsequent motion for reconsideration was insufficient to preserve his argument for appeal. *See Levine v. Haralson, Miller, Pitt, Feldman & McAnally, P.L.C.*, 244 Ariz. 234, 239, ¶ 16 (App. 2018) ("Generally, arguments raised for the first time in a motion for reconsideration are not preserved for appeal.").

¶40 Waiver aside, the lis pendens was plainly groundless. A lis pendens may properly be recorded to give notice of an action affecting title to real property. A.R.S. § 12-1191(A). The purpose of a lis pendens is to "prevent[] innocent third parties from acquiring interests" in real property that is the subject of litigation "without notice of the lawsuit[.]" *Santa Fe Ridge Homeowners' Ass'n v. Bartschi*, 219 Ariz. 391, 396, ¶ 16 (App. 2008). An action "affects a right incident to title" to real property only "if any judgment would expand, restrict, or burden a property owner's rights as bestowed by virtue of that title." *Id.* In the consolidated case, Heshion sought damages and declaratory relief relating to his status as an owner and manager of 1881 Preserve. A dispute over the ownership of 1881 Preserve does not affect title to property that 1881 Preserve owns. Heshion's contention that "[w]hoever owns 1881 [Preserve] owns title to its land" is simply incorrect. A limited liability company ("LLC") "is an entity distinct from its member or members[,]" A.R.S. § 29-3108(A), and ownership of an LLC does not confer ownership rights to the LLC's assets. *See Westbrook*, __ Ariz. at __, ¶ 26, 576 P.3d at 711 (holding that LLC of which wife was sole member was a necessary party to marital dissolution action, and noting that because an LLC is distinct from its members, wife could not be treated "as the owner of [the LLC's] property"); *cf. Dooley v. O'Brien*, 226 Ariz. 149, 155, ¶ 22 (App. 2010) (recognizing that shareholders "generally . . . have no right, title or interest in the corporate property" (citation modified)). The superior court did not err in determining that the lis pendens was groundless.

**II.    The superior court did not err in determining that Heshion knew or should have known that the lis pendens was groundless.**

¶41        Heshion challenges the court's finding that he knew or should have known that the lis pendens was groundless. According to Heshion, "there was certainly some basis and arguable grounds for concluding that" the consolidated case "would have an effect on title to [1881 Preserve's] real property."

¶42        A.R.S. § 33-420(A) authorizes an award of damages for the wrongful recording of a lis pendens if the person who recorded it "kn[ew] or ha[d] reason to know that the document [wa]s forged, groundless, contains a material misstatement or false claim or is otherwise invalid[.]" The recording party has "reason to know" that the lis pendens is groundless if the party "has knowledge of facts from which a reasonable [person] of ordinary intelligence . . . would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist." *Coventry Homes, Inc. v. Scottscom P'ship*, 155 Ariz. 215, 219 (App. 1987) (quoting the Restatement (Second) of Torts § 12(1) cmt. a (1965)). In reviewing the superior court's determination that Heshion knew or should have known that the lis pendens was groundless, we defer to the court's factual findings unless clearly erroneous but review its legal determinations de novo. *Westbrook*, __ Ariz. at __, ¶ 12, 576 P.3d at 708; *cf. Ariz. Republican Party v. Richer*, 257 Ariz. 237, 242, ¶ 10 (2024) (holding that when reviewing imposition of sanctions based on litigant's pursuit of groundless claim, appellate courts "defer to [the] trial court's findings of fact unless clearly erroneous," but reviews de novo the court's interpretation and application of statute).

¶43        As noted above, *see supra* ¶¶ 37-40, the lis pendens was groundless, a fact which, by itself, constitutes some evidence that Heshion knew or should have known of its groundlessness. *Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, 143, ¶ 29 (App. 2011) ("Ordinarily, a showing that a recorded instrument is invalid is the best evidence that whoever recorded the instrument had reason to know it was invalid" because "all people of sound mind are presumed to know the law.").

¶44        Further, the text of the lis pendens confirms Heshion's awareness that the consolidated case did not affect title to real property. In the lis pendens, Heshion stated that he had filed "a civil action" against the members and managers of 1881 Preserve "claiming an equitable right affecting the ownership of a limited liability company owning the following

described real estate." The lis pendens goes on to provide that "the purpose" of the suit Heshion filed "is to declare the transfers of the ownership of interests in" 1881 Preserve "to be fraudulent and void, and to quiet title in Plaintiff and to recover damages from the Defendants fraudulently converting the Plaintiff's interest therein."[2] The language of the lis pendens itself thus makes clear that Heshion recognized that his claims concerned only his ownership interest in 1881 Preserve, and not title to any of its assets.

¶45        Heshion's protestations that he recorded the lis pendens in good faith are insufficient to avoid the imposition of sanctions, since the recording party "must have more than a subjective, good faith belief in the propriety of its recording to escape liability under § 33-420(A)." *Westbrook*, __ Ariz. at __, ¶ 16, 576 P.3d at 709 (citation omitted). Moreover, Heshion's protestations of good faith ring hollow in light of the fact that the lis pendens purported to encompass not only most of the Property owned by 1881 Preserve, but also the 14,000 acres of grazing land that 1881 Preserve leased from the State. Heshion cannot plausibly contend that he held a good faith belief that his claims could affect title to real property owned by the State. The superior court did not err in determining that Heshion knew or had reason to know that the lis pendens was groundless.

**III.    We affirm in part and vacate in part the superior court's award of damages, fees, and costs under A.R.S. § 33-420(A).**

¶46        Heshion asserts that the court erred in awarding damages because Linscott failed to establish "the fact of damages" or "the amount of his damages" with "reasonable certainty."

¶47        Damages must be proved with "reasonable certainty." *Cnty. of La Paz v. Yakima Compost Co., Inc.*, 224 Ariz. 590, 607, ¶ 53 (App. 2010) (citation omitted). The amount of the award cannot rest upon "conjecture or speculation." *Id.* (citation omitted). We defer to the superior court's factual findings unless clearly erroneous. *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 246-47, ¶ 16 (App. 2005) (citation omitted); *see also Resolution Trust Corp. v. Western Techs., Inc.*, 179 Ariz. 195, 204 (App. 1994) ("Generally, . . .

---

[2] Although the lis pendens contains the phrase "*quiet title* in Plaintiff," (emphasis added), a review of Heshion's pleadings in the consolidated case show that he asserted no quiet title claim with respect to real property. Viewed in context, the phrase "quiet title in Plaintiff" refers to Heshion's efforts to secure his ownership interest in 1881 Preserve.

determining a reasonable amount of fees or sanctions to award is left to the discretion of the trial judge.").

¶48          Heshion argues, first, that the court abused its discretion in awarding attorney fees and costs of $108,097.67 without requiring Linscott to present "*China Doll* affidavits or the equivalent in-court evidence and testimony[.]"

¶49          In support of his request for an award of attorney fees, Linscott presented billing records from 1881 Preserve's counsel. The records were admitted without objection. Although the records were not accompanied by an affidavit of the kind described in *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183 (App. 1983), Heshion did not raise that objection at the hearing. Nor did he object to the qualifications of 1881 Preserve's counsel, to the reasonableness of their hourly rates, or to the necessity of the services performed as shown on the billing records. Although Heshion asserted a general objection that the overall amount of attorney fees claimed was excessive, a blanket objection of this nature was insufficient to preserve for appeal the specific challenges he now raises. *See In re Indenture of Trust Dated January 13, 1964*, 235 Ariz. 40, 52-53, ¶ 47 (App. 2014) ("A party challenging the amount of fees requested must . . . specify which amount or items are excessive."); *State ex rel. Corbin v. Tocco*, 173 Ariz. 587, 594 (App. 1992) (noting that party cannot successfully oppose a fee request "merely by asserting broad challenges to the application"; "It is not enough for an opposing party simply to state, for example, that the hours claimed are excessive and the rates submitted too high." (citation omitted)). Because Heshion failed to preserve for appeal the objections he now raises, we affirm the trial court's award of attorney fees and costs of $108,097.67. *Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("Because a trial court and opposing counsel should be afforded the opportunity to correct any asserted defects before error may be raised on appeal, absent extraordinary circumstances, errors not raised in the trial court cannot be raised on appeal.").

¶50          Heshion challenges the award of $44,452.60 in fees for the Receiver's services, arguing that Linscott "provided no clear, specific details on the specific Receiver activities and charges" relating to the removal of the lis pendens. Because Heshion did not assert below that the charges were insufficiently "clear" or "specific," he has waived that argument on appeal. *Trantor*, 179 Ariz. at 300. Waiver notwithstanding, the record refutes Heshion's claim. Linscott offered detailed billing records as exhibits in support of his request for an award of his fees; those records were admitted at the hearing without objection. The records set forth the

Receiver's hourly rate, the specific tasks performed by the Receiver in securing the removal of the lis pendens, the dates the services were performed, and the amount of time performing them. Heshion is entitled to no relief on his untimely challenge to the purportedly insufficient detail in the Receiver's billing records. We affirm the court's award of the Receiver's claimed fees under A.R.S. § 33-420(A).

¶51 Heshion argues that while "the lis pendens may have slowed" the sale of the RV Parcel, it "did not prevent" the sale, and so the court erred in awarding damages for the consequences of the failure of the sale to close.

¶52 In response, 1881 Preserve argues that the court properly determined that recording of the groundless lis pendens "caus[ed] [1881 Preserve] to default on multiple obligations" and "result[ed] in a later sale" of the Property "for a substantially smaller sum." Further, 1881 Preserve maintains, the damages resulting from all of the losses were established with the requisite "reasonable certainty."

¶53 In awarding damages totaling $95,383.74 for sums owed to the Youngs and the Cowans and for the overdue property taxes, the superior court found that Heshion "stipulated" to the Receiver's claim to those sums. The record does not support this finding. Although Heshion did not assert separate objections to each of those items of claimed damages, he consistently maintained that he did not cause the RV Parcel sale to fall through and so owed no damages resulting from the loss of the sale. Indeed, 1881 Preserve itself does not argue on appeal that Heshion "stipulated" to these claimed damages. We therefore conclude that Heshion preserved his objection to the award of these claimed damages and reject the finding that he "stipulated" to them.

¶54 Section 33-420 authorizes an award of damages "caused" by the recording of a groundless lis pendens. Causation cannot be established by speculation. *Lewin v. Miller Wagner & Co., Ltd.*, 151 Ariz. 29, 34 (App. 1986) ("Generally, damages that are speculative, remote or uncertain may not form the basis of a judgment."). Here, the record does not support a finding that the lis pendens caused the sale of the RV Parcel to fall through. On the contrary, in its March 2023 motion to allow the RV Parcel to close free and clear of the lis pendens, 1881 Preserve represented to the court that although the original closing date of November 2022 had passed, ZenMoose "confirmed" that it was "ready and willing to proceed to [c]losing on the contract terms." The court granted the Receiver's motion to lift the lis pendens and a new closing date was set in August 2023. The sale did not go through, however, and Linscott admitted in his testimony that

ZenMoose backed out of the sale due to concerns about 1881 Preserve's "dysfunction." In light of Linscott's admission that the sale of the RV Parcel failed to close for a variety of reasons in addition to the lis pendens, we agree with Heshion that the evidence fails to establish, with the requisite certainty, that the recording of the lis pendens caused the failure of the sale of the RV Parcel and the adverse consequences that resulted from the failure.

¶55        Even if we were to assume, contrary to the evidence, that the sale of the RV Parcel failed solely due to the lis pendens, we would be constrained to hold that the court erred in its calculation of "lost profits" damages. Damages from the lost opportunity to sell real property are determined by reference to the property's fair market value *at the time the sale was to take place*. *See N. Y. Ctr. for Esthetic & Laser Dentistry v. VSLP United LLC*, 159 A.D.3d 567, 568, 73 N.Y.S.3d 52, 53 (2018) (noting that the measure of damages for buyer's breach of contract to purchase real property is "the difference between the contract sale price and [the property's] fair market value *at the time of the breach*[.]" (emphasis added)); 77 Am. Jur. 2d Vendor and Purchaser § 547 ("As a general rule, the proper measure of damages for a breach of a real estate contract by the vendor is the difference between the original contract price and the fair market value of the property *at the time of the breach*." (emphasis added)). Here, 1881 Preserve's damages for the lost sale of the RV Parcel must be determined by reference to the fair market value of the RV Parcel when the sale was due to close, either on the original closing date in November 2022 or on rescheduled closing date in August 2023. Instead, the record shows that it was not until August 2024 that the court approved the proposed sale of the RV Parcel, along with the other property, for $4.7 million. In the absence of any evidence of the value of the RV Parcel at the time the sale to ZenMoose was due to close, the Receiver failed, as a matter of law, to present the evidence needed to calculate "lost profits" damages. Indeed, Linscott himself admitted that "whether that whole 2.475 million" lost profits claim "is actually a damage . . . is . . . debatable," and a "debatable" damage claim cannot be said to have been established with the requisite certainty. *See McAlister v. Loeb & Loeb, LLP*, __ Ariz. __, __, ¶ 23, 571 P.3d 891, 897 (2025) ("The burden is on the plaintiff to show the amount of lost future profits with reasonable certainty and a reasonable degree of accuracy." (citation modified)).

¶56        Because the record does not support a finding that the recording of the lis pendens caused ZenMoose to back out of the sale of the RV Parcel, Heshion cannot be said to have "caused" the adverse consequences resulting from the failure of that sale. We therefore vacate the court's award of damages for sums 1881 Preserve paid to the Youngs and

the Cowans, interest on overdue property tax payments, and lost profits. *See Styles v. Ceranski*, 185 Ariz. 448, 450 (App. 1996) ("It is not only our right, but our duty, to set aside a verdict if there is no evidence in the record to justify it." (citation modified)).

## CONCLUSION

**¶57**     For the foregoing reasons, we affirm the court's determination that the lis pendens was groundless and that Heshion knew or should have known that fact. We affirm the court's award under A.R.S. § 33-420 of a total of $152,550.27 for the services of counsel and the Receiver in securing the release of the lis pendens. We vacate the award of the remaining damages and remand with directions to modify the award to $152,550.27.

**¶58**     1881 Preserve requests an award of its costs and attorney fees incurred on this appeal under A.R.S. § 33-420, and Rule 21 ARCAP. In our discretion, we deny its request for attorney fees. 1881 Preserve may recover costs on appeal upon compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR